[No. G029323. Fourth Dist., Div. Three. Apr. 22, 2002.]

JOHN SZETELA, Plaintiff and Appellant, v.
DISCOVER BANK, Defendant and Respondent.

## COUNSEL

Strange & Carpenter, Brian R. Strange, Gretchen Carpenter; Law Offices of Barry L. Kramer and Barry L. Kramer for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Joel A. Feuer and Benjamin P. Broderick for Defendant and Respondent.

## OPINION

**MOORE, J.**—In this putative class action, plaintiff John Szetela challenges an order granting Discover Bank's (Discover) motion to compel arbitration. Szetela argues the arbitration agreement, to the extent it prohibits class treatment of small individual claims, is unconscionable and unenforceable. We agree and therefore issue a writ of mandate directing the trial court to strike the portion of the arbitration clause prohibiting class or representative actions.

I

### FACTS AND PROCEDURAL BACKGROUND

Szetela opened a Discover credit card account in July 1993. The terms of his account were governed by a Cardmember Agreement. In July 1999, Discover sent Szetela a notice inserted inside his billing statement that purported to amend the terms of the Cardmember Agreement to include an arbitration clause.

In relevant part, the amendment states: "ARBITRATION. WE ARE ADDING A NEW SECTION TO READ AS FOLLOWS: [¶] ARBITRATION OF DISPUTES. In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration. [¶] IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR ARBITRATE ANY CLAIMS AS A

REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit, and nothing undertaken therein shall constitute a waiver of any rights under this arbitration provision."

If Szetela did not wish to accept the terms of the amendment, his only option was to notify Discover, which would then close his account. If he had selected this option, he would have been permitted to pay his remaining balance under the terms of the Cardmember Agreement prior to the amendment.

Szetela was not the original named plaintiff in this case. In October 2000, James Shea, a New Jersey resident, filed the present action against Discover as a putative class action. Discover filed a motion in New Jersey seeking relief that would effectively bar the California action.[1] In December 2000, a first amended complaint was filed adding Szetela, a California resident, as an additional named plaintiff. The amended complaint asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent or negligent misrepresentation, and deceptive business practices. These claims were based on alleged practices by Discover that resulted in cardholders being improperly charged fees for exceeding their credit limits (overlimit fees) and incurring other penalties: (1) incorrectly stating the cardholder's "available credit" amount on their monthly statements, and (2) incorrectly calculating cardholders' "minimum payment due" on their monthly statements. Discover's overlimit fee was $29.

Based on the arbitration clause purportedly added to Szetela's Cardholder Agreement in 1999, Discover moved to compel arbitration of Szetela's claim on an individual basis. The court granted the motion, and Szetela eventually prevailed at arbitration, recovering $29, and then filed the present appeal. Discovery was also conducted to locate a new class representative, a person to whom the arbitration clause did not apply. A second amended complaint adding a new class representative was subsequently filed.

## II

### DISCUSSION

#### A. *Discover's Motion to Dismiss*

A threshold issue is whether this court has jurisdiction to hear Szetela's appeal. Discover argues that we do not and has moved to dismiss the appeal

---

[1]Discover lost the motion. The trial court's subsequent opinion is the subject of a request for judicial notice, see *post*, part II.B.

on the ground that an order compelling arbitration is not appealable. (See, e.g., *Melchor Investment Co. v. Rolm Systems* (1992) 3 Cal.App.4th 587, 591 [4 Cal.Rptr.2d 343].) Szetela argues that the order to arbitrate signaled the "death knell" of the putative class action and is therefore appealable. **(1)** The death knell doctrine permits the appellate court to review an order denying a motion to certify a class when it is unlikely the case will proceed as an individual action. (See, e.g., *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

Both sides raise valid points. Discover argues the death knell doctrine generally applies only in the context of a trial court's denial of a motion to certify a class. Szetela points out that although the court's order does not signal the death knell for the entire class, it does sharply limit the scope of the class to those not facially bound by the "no class action" provision. This alone, however, is not sufficient to create appellate jurisdiction.

Discover suggests the proper procedure is an appeal from an order on a motion to confirm or vacate the arbitrator's award. Yet Szetela, obviously, does not want to confirm the award, and grounds to vacate are extremely limited. (See Code Civ. Proc., § 1286.2.) It is not in Discover's interest to create an appealable order. Therefore, although the order is not appealable under the death knell doctrine, because of the unusual circumstances present here, we exercise our discretion to treat the appeal as a petition for a writ of mandate. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; *Rogers v. Municipal Court* (1988) 197 Cal.App.3d 1314, 1317 [243 Cal.Rptr. 530].) Unless we do so, this issue will effectively evade appellate review, establishing the lack of an adequate remedy of law necessary for a writ. The essential facts are undisputed and the case has been extensively briefed. The motion to dismiss is denied, and we therefore consider the merits of the case.

### B. *Szetela's Requests for Judicial Notice*

Szetela requests that we take judicial notice of a trial court opinion in a parallel case in New Jersey. As part of the record in the court of another state, we have discretion to take judicial notice of the opinion. (Evid. Code, § 452, subd. (d).) Discover apparently fears that if we take judicial notice of the opinion, we will unquestioningly adopt its findings, which is not the case. Szetela's request is granted; however, the opinion will be given the weight appropriate to an out-of-state trial court decision.

Szetela further requests that we take judicial notice of a document purporting to be Citibank's recently amended credit card agreement. This

document includes a no class action provision similar to Discover's amendment. Because this issue is not relevant to our decision in this appeal, we decline to do so. (See *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [14 Cal.Rptr.2d 377, 841 P.2d 897].) The request is denied.

## C.  *Enforceability of the Arbitration Clause*

The essence of Szetela's argument is that the no class action provision is unconscionable and should not be enforced.[2] Because no material facts are in dispute, we review the enforceability of the arbitration clause de novo. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683].)

■ An agreement to arbitrate is enforceable unless a recognized contract defense, such as unconscionability, exists. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686-687 [116 S.Ct. 1652, 1655-1656, 134 L.Ed.2d 902].) As our Supreme Court has noted, "under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 [99 Cal.Rptr.2d 745, 6 P.3d 669], fn. omitted (hereafter *Armendariz*).) Unconscionability is one such ground. (Civ. Code, § 1670.5, subd. (a).)

Szetela, as the party opposing arbitration, has the burden of proving the arbitration provision is unconscionable. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Unconscionability includes both substantive and procedural elements.[3] (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1531 [60 Cal.Rptr.2d 138].) Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].) Substantive unconscionability addresses the impact of the term itself, such as whether the provision is so harsh or oppressive that it should not be enforced. (*Ibid.*) These elements,

---

[2]We do not rule on the arbitration clause as a whole, merely that portion of it prohibiting class or representative actions.

[3]Szetela primarily argues California and federal cases in support of his argument regarding unconscionability. Discover states the Discover Cardmember Agreement is governed by Delaware law, but argues that Discover should prevail under either state's law. As Discover has not established the law of another state should apply, we apply California law to our analysis. To the extent Delaware law is more favorable, Discover has waived this argument by failing to brief the choice of law issue.

however, need not be present to the same degree. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

### 1. *Procedural Unconscionability*

██ Discover argues that a contract provision lacks procedural unconscionability unless the opposing party can demonstrate that no meaningful opportunity existed to obtain the offered goods or services from any other provider without the offending contract term. We disagree this is the relevant test for unconscionability. The availability of similar goods or services elsewhere may be relevant to whether the contract is one of adhesion, but even if the clause at issue here is not an adhesion contract, it can still be found unconscionable. ██ Moreover, "in a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere. [Citation.]" (*Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 827 [102 Cal.Rptr.2d 1].) ██ Therefore, whether Szetela could have found another credit card issuer who would not have required his acceptance of a similar clause is not the deciding factor.

Procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present. (See *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329 [83 Cal.Rptr.2d 348].) These are precisely the facts in the case before us. Szetela received the amendment to the Cardholder Agreement in a bill stuffer, and under the language of the amendment, he was told to "take it or leave it." His only option, if he did not wish to accept the amendment, was to close his account. We agree with Szetela that the oppressive nature in which the amendment was imposed establishes the necessary element of procedural unconscionability.

### 2. *Substantive Unconscionability*

Substantive unconscionability addresses the fairness of the term in dispute. Substantive unconscionability "traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." (*24 Hour Fitness, Inc. v. Superior Court, supra,* 66 Cal.App.4th at p. 1213.) The manifest one-sidedness of the no class action provision at issue here is blindingly obvious.

Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover, because credit card companies typically do not sue their customers in class action lawsuits. This provision is clearly meant to prevent customers, such as Szetela and those he seeks to represent, from seeking redress for relatively small amounts of money, such as the $29 sought by Szetela. Fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights.

While adhesive arbitration provisions are not per se unconscionable, "there may be arbitration provisions which do give an advantage to one party. . . . In those cases . . . it is not the requirement of arbitration alone which makes the provision unfair but rather the . . . manner in which the arbitration is to occur." (*Strotz v. Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 216, fn. 7 [272 Cal.Rptr. 680], disapproved on other grounds in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) It is the *manner* of arbitration, specifically, prohibiting class or representative actions, we take exception to here. The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored. Therefore, the provision violates fundamental notions of fairness.

While the advantages to Discover are obvious, such a practice contradicts the California Legislature's stated policy of discouraging unfair and unlawful business practices, and of creating a mechanism for a representative to seek relief on behalf of the general public as a private attorney general. (See, e.g., Bus. & Prof. Code, § 17200 et seq.) It provides the customer with no benefit whatsoever; to the contrary, it seriously jeopardizes customers' consumer rights by prohibiting any effective means of litigating Discover's business practices. This is not only substantively unconscionable, it violates public policy by granting Discover a "get out of jail free" card while compromising important consumer rights.

Furthermore, the clause violates public policy in another important way. One of the policy reasons for class actions is to promote judicial economy

and streamline the litigation process in appropriate cases. To allow litigants to contract away the court's ability to use a procedural mechanism that benefits the court system as a whole is no more appropriate than contracting away the right to bring motions in limine, seek directed verdicts, or use other procedural devices that allow the courts to operate in an efficient manner.

## III

### DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order directing Szetela to arbitrate his claim, and to enter a new order striking the provision prohibiting representative or class actions from the arbitration clause. Szetela shall recover his costs.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied May 16, 2002, and respondent's petition for review by the Supreme Court was denied July 31, 2002. Brown, J., and Chin, J., did not participate therein.