**Stan M. MACKEY, Plaintiff,**

v.

**MBNA AMERICA BANK, N.A., Defendant.**

**No. C04–1550L.**

United States District Court, W.D. Washington at Seattle.

Sept. 10, 2004.

Stan M Mackey, Seattle, WA, Pro Se.

Catherine Mary Kelley, Suttell & Associates, William George Suttell, Suttell & Associates, Mercer Island, WA, MBNA America Bank NA, for Defendant.

## ORDER DENYING MOTION TO VACATE ARBITRATION AWARD

LASNIK, District Judge.

### I. INTRODUCTION

This matter comes before the Court on a motion to vacate arbitration award (Dkt.# 1) filed by Plaintiff Stan M. Mackey ("Mackey"). In addition to responding to Mackey's motion, defendant MBNA America Bank, N.A. ("MBNA") filed a cross motion for entry of judgment on arbitration award (Dkt.# 4). For the reasons set forth in this Order, the Court denies both motions and dismisses this action.

### II. DISCUSSION

#### A. Background.

This dispute arises from an arbitration award in the amount of $33,277.56, entered in favor of MBNA and against Mackey. *See* Motion Ex. A.

The submissions to this Court in this matter are unusual. On July 8, 2004, Mackey filed a "motion to vacate arbitration award" (Dkt.# 1), which was noted on the Court's calendar for August 20, 2004. The first three pages of Mackey's motion read as a complaint, including statements regarding jurisdiction and venue, the parties, and the alleged facts.[1] The "motion" portion of Mackey's submission are found on pages three and four, where he argues that the parties did not agree to arbitrate disputes and therefore the arbitration award should be vacated. Mackey's prayer for relief seeks costs and "such other relief as the court deems proper." (Motion at 4.)

MBNA filed a response to Mackey's motion, but, understandably, filed no separate answer to his "complaint." *See* Response (Dkt.# 4.) MBNA's response also included a "cross motion for entry of judgment on arbitration award." However, MBNA filed no counterclaim alleging that it is

---

1. Mackey filed no separate complaint. Given the liberal pleading standards to which *pro se* litigants are entitled, the Court will consider Mackey's "motion" to constitute his complaint.

entitled to judgment confirming the arbitration award.

## B. Analysis.

### 1. Federal Arbitration Act.

Federal law provides that arbitration agreements are to be enforced by the courts. Section 2 of the Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of ... a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA clearly enunciates a congressional intention to favor arbitration:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements .... [T]he courts of appeals have ... consistently concluded that the questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■■■ When the validity of an arbitration agreement is challenged, a court should "apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). State laws applicable only to arbitration agreements that would invalidate such agreements are preempted by the FAA; however, "general contract defenses, such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Id.* (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

### 2. The Credit Card Agreement Arbitration Clause.

Mackey is asserting a contract defense that may be sufficient to invalidate an arbitration agreement. Specifically, Mackey denies the existence of any contract requiring the parties to submit disputes to arbitration. (Motion at 4.) MBNA contends that by using the MBNA credit card, Mackey agreed to the terms and conditions of the "Credit Card Agreement," which contains an arbitration provision. The agreement provides:

> This Arbitration and Litigation provision applies to you unless you were given the opportunity to reject the Arbitration and Litigation provisions and you did so reject them in the manner and timeframe required. If you did reject effectively such a provision, you agreed that any litigation brought by you against us regarding this account or this Agreement shall be brought in a court located in the State of Delaware.

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents, or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties, or declaratory or equitable relief), including Claims re-

garding the applicability of this Arbitration and Litigation section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the Claim is filed. (Bredickas Decl. Ex. B at 9–10.)

Mackey originally opened his credit card account in 1994. The original agreement did not contain an arbitration term. However, in December of 1999, all MBNA cardholders were notified of an amendment to the Credit Card Agreement, which added the arbitration term, by means of an enclosure mailing with a periodic statement. The MBNA cardholders were given the opportunity to opt-out of the arbitration agreement:

> If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is not sufficient to telephone us. Send this notice only to the address in this paragraph; do not send it with a payment. We must receive your letter at the above address by January 25, 2000 or your rejection of the Arbitration will not be effective.

(Bredickas Decl. Ex. C at 2.) Mackey contends that he never received the amendment that added the arbitration term. (Supplemental Mackey Decl. ¶ 5.) MBNA did not receive a written rejection of the arbitration term from Mackey and mail sent by MBNA to Mackey was not returned to MBNA. (Bredickas Decl. ¶ 10.)

The Credit Card Agreement provides that it is "governed by the laws of the State of Delaware and by any applicable federal laws." (Bredickas Decl. Ex. B at 9.) Mackey contends that this term of the agreement should not be enforced and that under a choice of law analysis, this Court should apply Washington law. The Court need not determine whether the Credit Card Agreement's choice of law term is enforceable, because under the choice of law analysis applied in both states Delaware law should be applied.

■■■ Both Washington and Delaware apply the elements set forth in the *Restatement (Second) of Conflict of Laws* when identifying the state with the most significant relationship to the specific transaction. A court should consider (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Cox v. Lewiston Grain Growers, Inc.*, 86 Wash.App. 357, 365–66, 936 P.2d 1191 (1997) (citing *Restatement (Second) of Conflict of Laws* § 188, at 575 (1971)); *Edelist v. MBNA America Bank*, 790 A.2d 1249, 1256 (Del.Super.Ct.2001). Mackey opened the account while he was a resident of the State of Washington. (Supp. Mackey Decl. ¶ 1.) Mackey has also averred that the majority of purchases he made through this account were in Washington State and that he has paid his bills on this account in Washington State. *Id.* ¶¶ 6, 8. These factors weigh in favor of finding that Washington law should apply. However, MBNA is incorporated in Delaware and Delaware is its principal place of business. MBNA is a large credit card corporation and transacts with individuals throughout the United States. Given the nationwide scope of MBNA's transactions, it has an obvious interest in uniform interpretation of its credit card agreements.

MBNA presumably elected to locate in Delaware in part for its laws regarding credit card accounts; Delaware, therefore, has an interest in its laws being applied to contracts such as those between MBNA and Mackey. *See Edelist,* 790 A.2d at 1256. The Court finds that the factors favoring the application of Delaware law outweigh those favoring the application of Washington law. The Court therefore applies Delaware law to this dispute.

█ A Delaware court enforced application of the arbitration clause in a credit card agreement on facts strikingly similar to those present here. *See id.* at 1258. In *Edelist* the plaintiff challenged MBNA's amendment of a credit card agreement to require arbitration. As here, in that case there was no proof that he had received the amendment or agreed to the amendment. In determining that the amendment should be enforced, the *Edelist* Court considered the evidence that MBNA sent Edelist notice of the amendment and that the mail was never returned. That court also considered evidence that the plaintiff did not exercise the opt-out provision. Given these facts and Delaware law, the *Edelist* Court found that the "credit card agreement was properly amended under Delaware law to include a provision requiring all disputes to be arbitrated." *Id.* This Court finds no error in that Delaware court's application of Delaware law. Given that the facts present in *Edelist* are substantively identical to those here, the Court finds that the Credit Card Agree-

ment was validly amended to include an enforceable arbitration term.[2] The Court therefore dismisses Mackey's claim.

### 3. MBNA's Cross Motion for Judgment on Arbitration Award.

As noted *supra*, MBNA's response included a cross motion for judgment on the arbitration award. However, MBNA has filed no counterclaim seeking confirmation of the award, nor has MBNA otherwise sufficiently alleged that it is entitled to such relief (or that this Court possesses jurisdiction to grant such relief). The Court therefore denies MBNA's cross motion.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Mackey's motion to vacate arbitration award (Dkt.# 1) and DISMISSES this action. The Court also DENIES MBNA's motion for judgment on the arbitration award (Dkt.# 4). The Clerk of the Court is directed to enter judgment on Mackey's claim IN FAVOR OF MBNA and AGAINST Mackey.

**2.** The facts of this case are very different from those present in cases cited by Mackey in which courts refused to enforce contract amendments that added arbitration clauses. *See* Reply at 4. For example, in *Myers v. MBNA America,* 2001 U.S. Dist. LEXIS 11900 (D.Mont.2001), the party resisting arbitration had cancelled her account prior to the time the arbitration clause went into effect. In *Perry v. FleetBoston Fin. Corp.,* 2004 WL 1508518 (E.D.Pa.2004), 2004 U.S. Dist. LEX-

IS 12616, the plaintiffs had ceased using their credit cards prior to the time the arbitration amendment went into effect. The court observed that had the plaintiffs continued to use the credit cards, "they would have manifested their assent to the new term, and the change would no longer be unilateral." *Perry,* 2004 WL 1508518, at *5, 2004 U.S. Dist. LEXIS 12616, at *15. It is undisputed that Mackey continued to use the credit card after the arbitration amendment went into effect.