[No. A108572. First Dist., Div. One. Dec. 15, 2005.]

DANA KLUSSMAN et al., Plaintiffs and Respondents, v.
CROSS COUNTRY BANK et al., Defendants and Appellants.

COUNSEL

Morrison & Foerster, William Stern; Ballard, Spahr, Andrews & Ingersoll, Martin C. Bryce, Jr., and Alan S. Kaplinsky for Defendants and Appellants.

Bramson, Plutzik, Mahler & Birkhaeuser, Robert M. Bramson; The Mills Law Firm, Robert W. Mills and Harry Shulman for Plaintiffs and Respondents.

Bill Lockyer, Attorney General, Ronald A. Reiter and Catherine Z. Ysrael, Deputy Attorneys General, for the Office of the Attorney General as Amicus Curiae.

OPINION

**MARCHIANO, P. J.**—Defendants Cross Country Bank (Bank), its credit card servicing company Applied Card Systems, Inc. (ACS), and Rocco A. Abessinio appeal from an order denying their motion to compel arbitration.[1] Most of the issues originally raised on appeal have been settled by our Supreme Court's recent decision in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*). Consequently, the principal issue remaining for decision is the proper application of the choice

---

[1] An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).)

of law rules outlined in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*). We conclude that the trial court correctly applied the appropriate choice of law analysis; that under California law the hidden waiver of the right to bring classwide arbitration in this case is unconscionable; and therefore, the arbitration clause is unenforceable.

## BACKGROUND

California residents, Dana Klussman and Samantha L. Klussman filed a class action complaint for damages and injunctive relief alleging five causes of action against Bank, ACS and Abessinio. The operative complaint for purposes of this appeal is the fourth amended complaint filed on May 28, 2004.[2] Bank is a Delaware corporation headquartered in Delaware that issues VISA and MasterCard credit cards and solicits a substantial amount of business in California. ACS is a Delaware corporation headquartered in Florida that services Bank's credit card operations and collects related debts. Abessinio is the owner and Chief Executive Officer of Bank and ACS.

The complaint alleged that Bank's California customers were primarily low credit individuals including elderly and disabled persons who had experienced bankruptcies or had other credit management problems, and who were "generally unsophisticated and vulnerable to financial predation." The complaint alleged that Bank has earned hundreds of millions of dollars by offering credit cards to these consumers and subsequently engaged in a pattern of unlawful practices such as misrepresenting payoff charges, imposing unauthorized fees, charging late fees for timely payments, automatically subscribing customers to unauthorized and costly programs and using abusive and harassing tactics in collecting fees and charges.

The first cause of action alleged violations of the California Consumers Legal Remedies Act (CLRA). (Civ. Code, § 1750 et seq.) The second cause of action alleged violations of the Delaware Unfair Business Practices Act. The third cause of action alleged breach of contract in that defendants failed to honor payoff agreements and promises of free credit increases. The fourth cause of action alleged fraud and imposition of excessive bank fees. The fifth cause of action alleged violations of the California unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.) The complaint requested damages, restitution, interest, an injunction and attorney fees.

---

[2] The original complaint, captioned "Class action complaint for damages and injunctive relief" was filed on October 9, 2001.

The relevant cardholder agreements stated that Delaware law governed except where federal law applied. The VISA and MasterCard cardholder agreements issued to Dana Klussman in 1997 contained a paragraph regarding arbitration that stated: "You and we agree that all claims, demands, or disputes that you may have against us or that we may have against you, which in any way relate to or arise out of this Agreement, your Account, or your use or attempted use of the Card, or the servicing of your Account by Applied Card Systems, or this agreement to arbitrate, as well as involving claims of fraud or misrepresentation, shall be brought in arbitration before the National Arbitration Forum ('NAF')." The paragraph concluded with the statement that: "Rules and forms of the NAF may be obtained by calling (800) 474-2371 and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com or at P.O. Box 50191, Minneapolis, Minnesota 55405. This arbitration agreement is made pursuant to a transaction involving interstate commerce."

In June of 1999, Bank issued Dana Klussman new cards and a new agreement. The 1999 agreement added language stating that the arbitration agreement: "shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 [FAA]. You and we waive the right to a jury trial."[3] Samantha Klussman was issued a VISA card in 1999 with an agreement that was similar to Dana Klussman's 1999 agreement.

On June 11, 2004, Bank, ACS and Abessinio filed a motion to compel arbitration.[4] Defendants based the motion on the contentions that the claims were governed by the FAA, that they fell within the scope of the arbitration clauses and that the defendants had not waived the right to compel arbitration.

Plaintiffs opposed the motion, first arguing that the CLRA and UCL claims for injunctive relief are not subject to arbitration under *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*) and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 [133 Cal.Rptr.2d 58, 66 P.3d 1157] (*Cruz*). Noting that the CLRA

---

[3] In February 2001, Bank sent Dana Klussman a change in terms notice that included a completely revised arbitration clause that expressly prohibited pursuing a claim in court or in arbitration on a classwide or representative basis and gave a choice of arbitrators among the NAF, American Arbitration Association or Judicial Arbitration and Mediation Services (JAMS). The parties have not claimed that the 2001 arbitration clause has any application to the issues raised in this appeal.

[4] The parties mention some intervening federal court proceedings that are not reflected in the record on appeal and have no bearing on the outcome of the appeal. (See, e.g., *Cross-County Bank v. Klussman* (N.D.Cal., Apr. 30, 2004, No. C-01-4190-SC) 2004 WL 966289.)

expressly authorizes class actions, plaintiffs contended that to the extent enforcement of the arbitration clause would preclude class actions, enforcement was prohibited under *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699] (*AOL*). Plaintiffs explained that although the arbitration clause at issue did not mention class actions, it was the functional equivalent of a waiver because the rules of NAF, the designated arbitrator, prohibit classwide arbitration unless all parties consent. The only way a consumer could discover this fact would be to obtain, read and understand the meaning of the lengthy NAF rules.[5] Applying California choice of law rules, plaintiffs argued that California law governed and would prohibit enforcement of the class action waiver as unconscionable.

The superior court agreed with plaintiffs that the CLRA and UCL claims for injunctive relief were not subject to arbitration under *Broughton, supra,* 21 Cal.4th 1066, and *Cruz, supra,* 30 Cal.4th 303. The court then applied the FAA and California law in a choice of law analysis pursuant to *Nedlloyd, supra,* 3 Cal.4th 459, and concluded that the arbitration clause was unenforceable because the NAF restriction on class actions could not be severed. The court denied the motion to compel arbitration.[6] Defendants promptly appealed.

## DISCUSSION

On appeal, defendants argue that a proper application of the choice of law rules mandates a finding that Delaware law governs and Delaware courts enforce class action waivers.

After defendants filed their opening brief, our Supreme Court decided *Discover Bank*, holding that a waiver of classwide arbitration in a consumer contract of adhesion was unconscionable in the circumstances of that case, and that the FAA does not preempt California's invalidation of such waivers. (*Discover Bank, supra,* 36 Cal.4th at pp. 162, 171.) Plaintiffs commented on the *Discover Bank* case in their brief and defendants addressed the case in their reply brief. After reviewing the arguments of the parties and the relevant authorities, we conclude that the pertinent arbitration clauses are unenforceable under California law.

---

[5] A declaration attached to plaintiffs' opposition stated that NAF rule 19(a) provides: "Any individual or entity may, only with the consent of all other Parties, join any dispute, controversy, Claim or Response in an arbitration by filing a Claim document stating the grounds, accompanied by the fee as provided in the Fee Schedule. An Arbitrator has no authority to issue an Order or Award binding any individual not a named Party or entity not a named Party, unless that individual or entity agrees."

[6] The parties agreed that the court should strike the arbitration clause entirely, rather than attempt to carve out the class action prohibition in the NAF rules.

*The CLRA and UCL Claims for Injunctive Relief*

■ Initially, we note that in *Broughton* and *Cruz*, our Supreme Court held that claims for injunctive relief under the CLRA (*Broughton*) and UCL (*Cruz*) are intended to remedy public wrongs and further the public interest and are not subject to arbitration.[7] In both cases, the court rejected the claim that federal law was inconsistent with the decisions. (*Broughton, supra,* 21 Cal.4th at pp. 1077–1078, 1080, 1082–1084; *Cruz, supra,* 30 Cal.4th at pp. 311–315.) Under the authority of *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (*Auto Equity*), we must follow the holdings of those cases that injunctive relief claims under the CLRA and UCL are not subject to arbitration.

*FAA Preemption*

Defendants initially argued that the trial court erred when it failed to apply federal law, which preempts any applicable state law. The 1997 arbitration clause in the credit card agreements provides that the clause concerns a transaction involving commerce. The 1999 clause expressly states that it is governed by the FAA. The FAA provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

■ The court in *Discover Bank, supra,* 36 Cal.4th 148, responded to the argument that the FAA preempts California law concerning class action waivers in arbitration agreements. The court determined that the FAA is silent on the issue of class action arbitration and that any conclusion regarding federal law must be based on the decisions of the United States Supreme Court. (*Discover Bank, supra,* at pp. 163–164.) The court concluded that federal law, in particular *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402], does not prohibit courts from deciding certain "gateway matters" concerning arbitration and that under California law, courts decide the issue of whether grounds exist for revocation of the arbitration agreement. "Under California law, the question whether

---

[7] The CLRA also contains an antiwaiver provision that provides any waiver of the provisions of the CLRA is "contrary to public policy and shall be unenforceable and void." (*Broughton, supra,* 21 Cal.4th at p. 1073.) It expressly provides for class actions. (Civ. Code, § 1752.)

'grounds exist for the revocation of the [arbitration] agreement' . . . based on 'grounds as exist for the revocation of any contract' [citation] is for the courts to decide, not an arbitrator." (*Discover Bank, supra*, at p. 171.)

*Discover Bank* establishes that the FAA does not preempt a court from ruling on initial matters of state law regarding contractual grounds for revoking an arbitration agreement. In light of *Discover Bank*, we consider whether to apply California or Delaware law when evaluating the waiver in this case.

### Choice of Law—Conflicts Analysis

The choice of law provision in the agreements in this case provides that they are governed by Delaware law except where federal law applies. The parties agree that the analysis in *Nedlloyd, supra,* 3 Cal.4th 459 is the applicable test to determine the law that governs the contract at issue. The court in *Nedlloyd* reaffirmed the applicability of section 187 of the Restatement Second of Conflict of Laws (Restatement).[8]

■ Assuming that the claims at issue are within the scope of the choice of law clause, we follow the analysis set out by the court in *Nedlloyd.*[9] "Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a

---

[8] Restatement section 187 provides: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue. [¶] (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." (Rest., *supra,* § 187, subds. (1) & (2), p. 561.)

[9] The parties apparently do not dispute the general proposition that the claims raised are within the scope of the arbitration clause.

'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fns. omitted.)

### Substantial Relationship of Chosen State

Delaware has a substantial relationship to the defendants in this case. It is the state where Bank is incorporated and headquartered and the state of incorporation of ACS. (*Nedlloyd, supra,* 3 Cal.4th at p. 467.) Plaintiffs do not dispute this finding, but only argue that Delaware's interest does not outweigh that of California. We next consider whether the law of the chosen state conflicts with that of California.

### Delaware Law on Class Action Waivers

In general, Delaware recognizes the concept of unconscionability in commercial transactions. (See, e.g., *Architectural Cabinets, Inc. v. Gaster* (Del.Super.Ct. 1971) 291 A.2d 298 [finding confession of judgment clause unconscionable where not clearly stated in agreement].) The Supreme Court of Delaware would refuse to enforce a provision in an agreement that it determined was unconscionable. (*Worldwide Ins. Group v. Klopp* (Del. 1992) 603 A.2d 788, 790–792 [court refused to enforce insurance policy provision limiting ability to demand trial de novo to cases where award exceeded state's financial responsibility law].)

Nevertheless, Delaware would not invalidate an arbitration clause merely because it prohibited class actions. We took judicial notice of the amicus curiae brief filed in *Discover Bank* by Bank's counsel, who then represented the Delaware State Bank Commissioner. The commissioner argued that Delaware routinely enforces class action waivers in arbitration agreements and cited a number of unpublished opinions that supported his contention.

In a published decision, a Delaware Superior Court determined that an express waiver in an arbitration agreement of the ability to bring a class action is not unconscionable. (*Edelist v. MBNA America Bank* (2001) 790 A.2d 1249, 1260–1261 (*Edelist*).) The agreement at issue in *Edelist* stated: "[No claim] may be brought as a class action or as a private attorney general. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any [c]laim." (*Id.* at p. 1253.)

Applying Delaware law, the superior court declined to find the clause unconscionable in light of the "clearly articulated" statement waiving class actions. (*Id.* at p. 1261; see also *Johnson v. West Suburban Bank* (3d Cir. 2000) 225 F.3d 366, 367 (*Johnson*) [claims under federal statutes can be referred to arbitration, even though arbitration clause renders class actions unavailable].)[10]

For purposes of this analysis, we will assume that a Delaware court would permit a class action waiver in an arbitration agreement.

### California's View of Class Action Waivers Implicates Public Policy

We next review the relevant California law to decide if the law of Delaware conflicts with and is contrary to a fundamental policy in California. (*Nedlloyd, supra,* 3 Cal.4th at p. 466.)

The parties to this appeal do not dispute the existence of a conflict between Delaware and California law on this issue. Courts in California have not hesitated to invalidate class action waivers in the appropriate circumstances. The courts in *AOL, supra,* 90 Cal.App.4th 1, *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862] (*Szetela*), and *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396 [34 Cal.Rptr.3d 659] (*Mailbox Center*), have all invalidated class action waivers in arbitration agreements.[11]

In *Discover Bank, supra,* 36 Cal.4th 148, our Supreme Court concluded that when a class action waiver "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra,* at pp. 162–163.)

---

[10] *Johnson* was expressly rejected by the court in *Discover Bank, supra,* 36 Cal.4th at page 161, to the extent it held that class action arbitration was merely a procedural right.

[11] The Second District Court of Appeal recently filed its opinion in *Aral v. Earthlink, Inc.* (2005) 134 Cal.App.4th 544 [36 Cal.Rptr.3d 229] (*Aral*). That court affirmed the denial of Earthlink's petition to compel arbitration, based in part on *Discover Bank, supra,* 36 Cal.4th 148, and *AOL, supra,* 90 Cal.App.4th 1, and concluded that class action waivers in adhesion contracts are unconscionable where the case involves allegations that a large number of consumers were cheated out of small amounts of money. (*Aral, supra,* at p. 548–549.)

The clear conflict between the law of the two states requires an evaluation of whether this conflict implicates a fundamental public policy in California. We conclude that it does for the following reasons.

■ The court in *Discover Bank* cited the discussions in *AOL* and *Szetela* regarding unconscionability and public policy with approval. (*Discover Bank, supra*, 36 Cal.4th at pp. 158–160.) *AOL* involved a choice of law and a forum selection clause in an internet company's subscriber agreement. The chosen state did not allow consumer lawsuits to be brought as class actions. (*AOL, supra*, 90 Cal.App.4th at pp. 4–5.) The *AOL* court explained that California courts will not defer to a choice of law clause where doing so "would substantially diminish the rights of California residents in a way that violates our state's public policy." (*AOL, supra*, at p. 12.) The court relied on two sources of public policy in refusing to enforce the Virginia choice of law clause: (1) the CLRA contains an express provision voiding any attempted waiver of rights under the CLRA as contrary to public policy (Civ. Code, § 1751); and (2) enforcing the choice of law clause would violate "an important public policy underlying California's consumer protection law" because Virginia law prohibits consumer class action lawsuits and thereby diminishes the rights of consumers. (*AOL, supra*, at pp. 4–5.)

To explain the significance of class action consumer litigation in California, the *AOL* court quoted from Justice Mosk's opinion for a unanimous Supreme Court in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964] as follows: " 'Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society.' . . . 'Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers [are] often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary byproducts, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.' " (*AOL, supra*, 90 Cal.App.4th at p. 17.)

Because the chosen state's law in *AOL* was hostile to class actions, the *AOL* court concluded: "The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the . . . forum selection clause." (*AOL, supra,* 90 Cal.App.4th at p. 18.)

*Szetela* concerned a class action by a credit cardholder against a bank. Because the parties had already engaged in arbitration, rather than refusing to enforce the arbitration agreement, the court issued a writ of mandate directing the trial court to strike the contractual provision prohibiting classwide arbitration. (*Szetela, supra,* 97 Cal.App.4th at pp. 1096–1097, 1099, fn. 2.) The court discussed the procedural and substantive elements of unconscionability and concluded that the contract in question was presented on a "take it or leave it" basis without the opportunity for meaningful negotiation and was, therefore, procedurally unconscionable. (*Id.* at p. 1100.)[12]

Regarding substantive unconscionability, the court found the "manifest one-sidedness of the no class action provision at issue here is blindingly obvious." (*Szetela, supra,* 97 Cal.App.4th at p. 1100.) The court noted that the provision was styled as a mutual prohibition, but "credit card companies typically do not sue their customers in class action lawsuits." The court found it obvious that the purpose of the provision was to deter customers from seeking redress for small amounts of damages. (*Id.* at p. 1101.) The court concluded that the prohibition violated notions of fundamental fairness and public policy by allowing litigants to contract away a procedural mechanism that benefits the court system as a whole. (*Id.* at pp. 1101–1102.)

Recently, in *Mailbox Center,* the Fourth District Court of Appeal reversed a trial court's decision that claims of franchisees against the franchisor must be arbitrated on an individual basis where classwide arbitration was prohibited by the rules of the designated arbitrator. (*Mailbox Center, supra,* 133 Cal.App.4th at pp. 396, 399, 403–404.) The court determined that "broad statutory arguments, implicating the public interest, are raised," where a class action waiver is imposed in an adhesion contract. The court ruled that the class prohibition was unconscionable. (*Id.* at pp. 410, 417.)

---

[12] " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

■ Each of the foregoing courts refused to enforce an unconscionable waiver provision on public policy grounds. In addition, *Discover Bank* mentioned the public policy against exculpatory waivers in Civil Code section 1668 as one that may be violated by class action waivers because the impact is to shield a company from liability for many small instances of exploitation.[13] (*Discover Bank, supra,* 36 Cal.4th at pp. 160–161.) The court also cited *Armendariz, supra,* 24 Cal.4th at pages 100–101 (arbitration agreement cannot serve to waive employee rights under the Fair Employment and Housing Act), which noted that Civil Code section 3513, which prohibits contractual waiver of laws established for a public reason, expresses a public policy against waiver of such rights. (*Discover Bank, supra,* 36 Cal.4th at p. 160.)

■ The right to seek classwide redress is more than a mere procedural device in California. (Contra, *Johnson, supra,* 225 F.3d at p. 369 [right to class action "merely procedural"].) California courts assessing waivers of the right to seek classwide relief have relied on statutory expressions of public policy regarding unconscionable contracts and exculpatory waivers to invalidate the offending agreements.

Nevertheless, defendants argue that the federal district court decision in *Arriaga v. Cross Country Bank* (S.D.Cal. 2001) 163 F.Supp.2d 1189 (*Arriaga*) upheld the same arbitration agreement that is at issue in this appeal and should be followed.[14] The court in *Arriaga* based its decision on the belief that a court could not consider the issue of substantive unconscionability because it concerned the validity of the contract as a whole. (*Id.* at p. 1194.)[15] The court also felt that burying the class action waiver within layers of the NAF rules was not unconscionable because an individual should expect that agreeing to arbitration would involve a waiver of the ability to bring a class action. (*Ibid.*)

We note that the district court's decision in *Arriaga* was criticized by the court of appeals in *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1150, footnote 14 (disapproving language stating that agreement was not one-sided, stating that

---

[13] Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

[14] Another case cited by Bank only involved a version of its credit card agreement that contained an express waiver of the ability to bring class action arbitration. (See *Gipson v. Cross Country Bank* (M.D.Ala. 2003) 294 F.Supp.2d 1251, 1253.) As the court in *Discover Bank* stated regarding its position on class action waivers: "We acknowledge that other courts disagree." (*Discover Bank, supra,* 36 Cal.4th at p. 161.)

[15] *Discover Bank* did not mention *Arriaga,* but it rejected the notion that a court could not decide the issue of unconscionability. (*Discover Bank, supra,* 36 Cal.4th at pp. 171–173.)

there is "no chance" of AT&T filing class action against its customers), and *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1176–1177, footnote 15 (rejecting language in *Arriaga* to the effect that unilateral bar on classwide arbitration is not unconscionable). We agree with the criticism and decline to follow the analysis in *Arriaga.*

Defendants also suggest that this court follow the reasoning of Justice Baxter's concurring and dissenting opinion in *Discover Bank* on the subject of unconscionability. As an intermediate appellate court, we do not have that option. (*Auto Equity, supra,* 57 Cal.2d at p. 455.) Defendants also argue that the proper choice of law analysis was applied in an unpublished federal district court case, *Egerton v. Citibank, N.A. et al.* (C.D.Cal., Feb 18, 2004, No. CV036907DSF(PLAx)) 2004 WL 1057739 (*Egerton*). That court, applying South Dakota law, concluded that the agreement at issue was not unconscionable because South Dakota enacted a statute allowing credit card companies to add arbitration clauses to consumer agreements. (*Egerton, supra,* at p. *3.) The *Egerton* court never considered whether South Dakota law was contrary to a fundamental policy in California. Its analysis does not apply to this case.

Defendants argue that *Discover Bank* did not hold that all class action waivers are unconscionable. They contend that *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 [9 Cal.Rptr.3d 190] (*Garcia*), which predated *Discover Bank,* suggested that class action waivers do not violate any fundamental public policy. But the court in *Garcia* merely mentioned, "[i]n the absence of a class action waiver, California law authorizes classwide arbitrations . . . ." (*Garcia, supra,* at p. 298.) That court never suggested it was considering public policy, but merely referred the case for a determination of whether the silent agreement prohibited classwide arbitration. (*Ibid.*) Decisions are not authority for issues not considered or decided therein. (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1330, fn. 8 [58 Cal.Rptr.2d 308].)

Although defendants are correct that the court in *Discover Bank* did not reject all class action waivers, it did denounce waivers such as the one in this case, where the amounts of damages are small, the adhesion contract concerns California consumers and the allegations allege the defendant has "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.) It confirmed the fundamental nature of the policy favoring class actions when it quoted from *Szetela, supra,* 97 Cal.App.4th at page 1101. ". . . 'By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any,

customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored. Therefore, the provision violates fundamental notions of fairness.' . . ." (*Discover Bank, supra,* 36 Cal.4th at pp. 159–160.)

We find the reasoning of *Discover Bank* even more compelling in this case because the waiver in this case was not expressed in the agreement, the plaintiffs have pleaded causes of action under the CLRA and UCL that are statutes that seek to vindicate public rights, and plaintiffs seek to represent only California residents, not a nationwide class as was involved in *Discover Bank.*[16] The foregoing California cases and the reasoning of the *Discover Bank* court leave no doubt that Delaware's approval of class action waivers, especially in the context of a "take it or leave it" arbitration clause is contrary to fundamental public policy in California.

### California's Interest Outweighs That of Delaware

The final question in the choice of law analysis is whether California's interest in the issue is "materially greater" than that of Delaware. (*Nedlloyd, supra,* 3 Cal.4th at p. 466.) Defendants argue that Delaware has a greater interest than any other state in applying its laws to credit extended by a Delaware bank. Defendants rely on *Edelist, supra,* 790 A.2d at page 1256 and *Mackey v. MBNA America Bank, N.A.* (W.D.Wash. 2004) 343 F.Supp.2d 966 (*Mackey*), to argue that Delaware banks must be subject to uniform regulation, and that Delaware therefore has a more significant interest in the subject matter of this action. But *Edelist* and *Mackey* merely noted the plaintiffs' states of residence and that they paid their bills in that state, and concluded that the facts that the bank at issue was incorporated and headquartered in Delaware and did a nationwide business meant that Delaware had "more than a passing interest in the validity and enforcement of choice of law provisions." (*Edelist, supra,* at p. 1256; see *Mackey, supra,* at pp. 969–970.)

---

[16] After this case was submitted, the Second District Court of Appeal filed its decision following the Supreme Court's remand in *Discover Bank v. Superior Court* (2005) 134 Cal.App.4th 886 [36 Cal.Rptr.3d 456]. The court assumed for purposes of the opinion that enforcement of the class action waiver in that case would be contrary to a fundamental public policy of California, but concluded that California's interest was not materially greater than that of Delaware. (*Id.* at p. 895.) The factors that distinguish the *Discover Bank* case from this case are the ones we have already noted: there was no claim under any California consumer law; the plaintiff sought to use California as a platform for a nationwide class action; and the waiver was in the agreement, rather than buried in a website that could be changed at any time without notice. The first of those factors was noted by the appellate court in *Discover Bank,* when it distinguished *Aral, supra,* 134 Cal.App.4th 544. (*Discover Bank,* at p. 894, fn. 4.)

*Edelist* and *Mackey* did not evaluate the nature of the competing interests at stake. The subject matter of this action does not involve the inner workings of Delaware banks or other corporations. Plaintiffs do not seek to apply another state's law to the rules of shareholder voting or change Delaware's regulation of banking and credit card issuers incorporated and residing within its borders. (See, e.g., *VantagePoint v. Examen, Inc.* (2005) 871 A.2d 1108, 1115 [Delaware law applies to issues involving corporate internal affairs].)

When evaluating the significance of each state's interest in the transactions at issue, we consider more than Delaware's general desire for uniformity in bank regulation. We note that the contract was made in California. (*Hardy v. Musicraft Records, Inc.* (1949) 93 Cal.App.2d 698, 701 [209 P.2d 839] [court held that offer sent from New York, received and accepted in California was made in California]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 75, p. 122; Rest., § 188, com. e, p. 579 [place of contracting is place of occurrence of last act necessary to give the contract binding effect].) The state where a party to the contract is domiciled has an obvious interest in the application of its law protecting its citizens against the unfair use of superior bargaining power. (Rest., § 188, com. c, p. 578.)

Contrary to defendants' argument, this case is not merely an instance of a credit cardholder who randomly chose to sue in California. Plaintiffs here are California residents. One named plaintiff was a high school student in California when defendants first solicited her. Plaintiffs received the credit cards in California, used the cards in California, paid the bills from California and were harassed at their homes and jobs in California by Bank and ACS. Plaintiffs' complaint invokes primarily California laws, including laws expressing the public policy of protecting consumers. The class plaintiffs seek to represent is composed solely of California residents with California statutory claims. California has a number of significant contacts with the subject matter of this action, while Delaware's interest lies in more general matters of corporate regulation.

California's interest becomes even more intense when it is protecting its citizens from "take it or leave it" agreements that incorporate one-sided protections and impose hidden waivers without actual notice or a realistic opportunity to reject the waiver. The waiver in this case is buried in a linguistic labyrinth within the rules of the chosen arbitral forum, available only to the most diligent consumer who Theseus-like must wind through a large number of rules and procedural requirements imposed by the NAF. Even if the consumer traversed the maze and located the provision, he or she

would then have to understand that the language of NAF rule 19(a) regarding joinder by consent of all parties is the functional equivalent of a class action waiver.[17]

*Discover Bank* establishes the fundamental nature of California's concern with protecting consumers from unscrupulous practices, particularly when only small individual amounts are at issue. Several public policy interests of California are at stake, including the statutory policies against exculpatory waivers, prohibiting enforcement of unconscionable contract provisions and against waivers of laws established for a public purpose. (Civ. Code, §§ 1668 [exculpatory contracts contrary to policy], 1670.5 [court may refuse to enforce unconscionable contract], 3513 [no waiver of a law established for a public reason].)

Although Delaware's interest in uniform regulation of the business practices of banks incorporated under its laws is significant, when it is measured against California's interest in providing effective protection for California customers of out-of-state banks when they are overcharged, defrauded, abused and harassed, Delaware's interest does not outweigh that of California. "And a state may have little interest in the application of a statute designed to regulate or to deter a certain business practice if the conduct complained of is to take place in another state." (Rest., § 188, com. c, p. 578.) California's fundamental public policy interest in protecting its residents is materially greater than Delaware's interest in uniformity among its corporate citizens.

██ The trial court's analysis under *Nedlloyd* correctly determined that California law applies, that the waiver is unconscionable under California law and that it cannot be severed from the arbitration clause. For the foregoing reasons, we agree with that court and affirm the order denying enforcement of the arbitration provision.[18]

---

[17] Prior to oral argument in this case, we viewed the NAF Web site referenced in the agreement. The first selection "Programs & Rules" provided six choices. (<http://www.arb-forum.com>) Selecting "Arbitration at NAF" produced four choices, one of which was "NAF Code of Procedure." Selecting that alternative produced a menu containing an index showing an introduction and eight separate parts and three separate appendices. One had to open and peruse the introduction and parts 1, 2 and 3 before getting to rule 19 regarding "Joinder, Intervention, Consolidation, and Separation." After oral argument, the Web site had changed so that "Programs & Rules" showed two alternatives for the NAF Code of Procedure: the July 2003 version and the January 2005 version. (<http://www.arb-forum.com> [as of Dec. 15, 2005].) The rules regarding joinder appear to be the same in both versions.

[18] Plaintiffs raised an alternative ground for affirmance based on NAF's noncompliance with California disclosure requirements. Because we affirm on the primary ground, we do not reach the alternative argument.

## CONCLUSION

The order denying defendants' motion to compel arbitration is affirmed.

Stein, J., and Margulies, J., concurred.