OPINION
JURY, Bankruptcy Judge.
Chapter 7 [1] trustee, Linda S. Green (the “Trustee”), moved to compel turnover of all or some of the income distributed to debtor, Herbert M. Zukerkorn (“Herbert”), under a spendthrift trust. The Trustee’s motion and amended motion raised issues regarding (1) the enforceability of the trust’s choice of law clause which designated Hawaii as the governing law; (2) the validity of the trust’s spendthrift clause; and (3) whether the postpetition income distributions to Herbert became *186 property of the estate under § 541(a)(5)(A). The bankruptcy court denied the Trustee’s motion in its entirety, the Trustee appealed, and we AFFIRM.
I. FACTS
The facts established by the record in this case are undisputed. In 1978, Herbert’s mother, Sally Zukerkorn (“Sally”), established the Revocable Trust of Sally Zukerkorn (hereinafter, the “Sally Zuker-korn Trust”) after Herbert’s father passed away. Sally was the settlor (“grantor”), individual trustee, and beneficiary of this trust during her lifetime. American Trust Co. of Hawaii, Inc. was named as the corporate trustee. The trust was fully revocable and provided that Sally could use all income and whatever portion of the principal she deemed fit for whatever purposes she believed “... to be for Grantor’s best interest.”
The trust contained the following spendthrift clause:
No interest under this instrument shall be transferable or assignable by any beneficiary, or be subject during said beneficiary’s life to the claims of said beneficiary’s creditors. This paragraph shall not restrict the exercise of any power of appointment.
The trust also contained a choice of law clause:
This instrument and the dispositions under it shall be construed and regulated and their validity and effect shall be determined by the law of Hawaii.
On October 15, 1982, Sally amended the trust. The amended trust provided that on her death the corpus was split into two separate trusts for her sons Herbert and Jack. Herbert was named as the successor trustee and lifetime beneficiary for his trust. Herbert’s children, Jon and Sara, were granted a contingent remainder interest in Herbert’s trust. Herbert’s brother Jack was named as the successor trustee and lifetime beneficiary of the second trust. Herbert was named as the successor trustee of this trust upon Jack’s death. Herbert’s children, Jon and Sara, were likewise named the contingent beneficiaries of Jack’s trust.
Sally died in 1984. Jack died in 1986. Herbert became the trustee of both trusts. In 2003, Herbert, acting as trustee, sold Sally’s real property for $5.8 million. He netted $4 million and placed half into Jack’s trust and half into his own trust. Jack’s trust terminated when Herbert’s children reached the age of 45. Herbert remains the trustee and the life beneficiary of the Sally Zukerkorn Trust up through the present time.
The Bankruptcy
On September 20, 2010, Herbert and Jennifer Zukerkorn (collectively, “Debtors”) filed their chapter 7 petition. Green was appointed the Trustee.
Debtors’ Schedule B identified Herbert’s life income interest only in the trust and noted that the trust had a spendthrift provision valid under Hawaii law, which governed the instrument. Debtors valued Herbert’s interest at “0.00” and did not claim this interest as exempt. Debtors’ Schedule I showed income of $12,224 per month, $7,160 of which was from the trust and related income.[2] Debtors’ Schedule F showed that they owed $162,062 in unsecured debt, consisting mostly of credit card debt.
On December 3, 2010, the Trustee filed a motion to compel turnover of twenty-five percent of the distributions paid to Her *187 bert pursuant to the trust, contending that portion was property of the estate under Cal. Prob.Code § 15306.5.[3] The Trustee argued that California law, rather than Hawaii law, should apply to the Sally Zuk-erkorn Trust because (1) California had the more substantial relation to the dispute and (2) enforcing the spendthrift provision under Hawaii law would violate the fundamental policies of California.
On April 29, 2011, the Trustee filed an amended motion, seeking turnover of the entire principal and all income from the trust, arguing that the spendthrift clause was unenforceable because Herbert was both the trustee and beneficiary of the trust. Alternatively, the Trustee sought Herbert’s postpetition income distributions from the trust, contending they were property of the estate under § 541(a)(5)(A).[4]
The bankruptcy court considered the Trustee’s motion and amended motion in two phases. First, it concluded on cross motions for summary judgment that the trust was governed by Sally’s choice of Hawaii law. Second, after an evidentiary hearing held on August 11, 2011, the bankruptcy court concluded that none of the principal or interest paid or payable to Herbert under the trust was property of the estate since the spendthrift provisions were fully enforceable under Hawaii law.[5] The court further found that § 541(a)(5)(A) was inapplicable to the Sally Zukerkorn Trust because it was an inter vivos trust as opposed to a testamentary trust. Thus, Herbert’s postpetition income distributions were not property of the estate. On September 2, 2011, the bankruptcy court entered its order denying the Trustee’s motion to compel turnover of property of the estate. The Trustee timely appealed.
II. JURISDICTION
The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.
*188 III.ISSUES
A. Did the bankruptcy court err by deciding that Hawaii law rather than California law should govern the Sally Zuker-korn Trust?
B. Did the bankruptcy court err in concluding that the postpetition income distributions from the Sally Zukerkorn Trust to Herbert were excluded from property of the estate? [6]
IV.STANDARD OF REVIEW
We review de novo the bankruptcy court’s decisions on summary judgment, choice of law questions, statutory interpretation and whether property is property of the estate. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir.2010) (summary judgment); Mazza v. Am. Honda Mtr. Co., 666 F.3d 581, 589 (9th Cir.2012) (choice of law); Simpson v. Burkart (In re Simpson), 557 F.3d 1010, 1014 (9th Cir.2009) (statutory interpretation); White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008) (property of the estate).
V.DISCUSSION
The trustee is charged with the duty of collecting and reducing to money the property of the estate. § 704(a). Property of the bankruptcy estate is property in which the debtor has a “legal or equitable interest as of the commencement of the case.” § 541(a)(1). Section 541(c)(2) excludes from the property of the estate any property that is held in trust and subject to a restriction on transfer under applicable nonbankruptcy law. An anti-alienation provision in a valid spendthrift trust created under state law is an enforceable restriction on the transfer of a beneficial interest of the debtor. Patterson v. Shumate, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).
The bankruptcy court found that the Sally Zukerkorn Trust was a valid spendthrift trust and that ruling has not been appealed. The Trustee’s main complaint on appeal is that the bankruptcy court erred in upholding Sally’s choice of Hawaii law when Herbert was domiciled in California and filed bankruptcy there. Based on these facts, the trustee argues that California law should apply.
Hawaii recognizes spendthrift trusts, see Welsh v. Campbell, 41 Haw. 106 (Haw.1955) and Haw.Rev.Stat. § 554G-5(d),[7] as does California, see Canfield v. Sec.-First Nat. Bank, 13 Cal.2d 1, 87 P.2d 830 (1939) and Cal. Prob.Code, §§ 15300, 15301. However, California limits the scope of the spendthrift protection under Cal. Prob.Code § 15306.5. That statute provides that a judgment creditor may obtain an “order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the [spendthrift] trust instrument, ...” as long as the payment *189 does not exceed twenty-five percent of the funds otherwise available to the beneficiary.[8] Because a bankruptcy trustee enjoys the powers of a hypothetical judgment creditor under § 544(a)(1), the Ninth Circuit has held that the trustee can seek an order under Cal. Prob.Code § 15306.5 to obtain twenty-five percent of a valid spendthrift trust. Neuton v. Danning (In re Neuton), 922 F.2d 1379 (9th Cir.1990). Due to the differences in Hawaii and California law, the parties do not dispute that there is a genuine conflict in the laws of the two states. We thus look to choice of law rules for guidance.
Federal courts in the Ninth Circuit and California state courts both look to the Restatement (Second) of Conflicts of Law (1971) (the “Restatement”) for the choice of law rules. See Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1069 (9th Cir.2002); Mandalay Resort Grp. v. Miller (In re Miller), 292 B.R. 409, 413 (9th Cir. BAP 2003); see also Nedlloyd Lines B.V. v. Super. Ct., 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1151 (1992) (California courts apply the principles set forth in the Restatement Second of Conflict of Laws). Although § 6 of the Restatement sets forth general factors for consideration in a choice of law analysis,[9] the Restatement also points to specific factors related to the issue at hand. Here, the validity and enforceability of the choice of law clause in Sally’s trust implicates both contract choice of law rules and those applicable to trusts.[10]
Section 187 of the Restatement relates to contracts and provides:
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an *190 explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties’ choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
Comment g of § 6 states:
Protection of justified expectations. This is an important value in all fields of the law, including choice of law. Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state. Also, it is in part because of this factor that the parties are free within broad limits to choose the law to govern the validity of their contract (see § 187) and that the courts seek to apply a law that will sustain the validity of a trust of movables (see §§ 269-270).
In applying § 187 of the Restatement, the California Supreme Court in Nedlloyd Lines, 11 Cal.Rptr.2d 330, 834 P.2d at 1158, explained:
[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties’ choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties’ choice of law. If, however, either test is met, the court must next determine whether the chosen state’s law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties’ choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a ‘materially greater interest than the chosen state in the determination of the particular issue.... ’ If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state’s fundamental policy.
Choice of law rules pertaining to trusts also inform our analysis. Similar to the contractual area, choice of law principles generally respect a designation in a trust which provides that certain law be applied to interpret it. In its introductory note, Chapter 10 of the Restatement pertaining to trusts states:
The creation of a trust is a method by which the owner of property makes a disposition of it. The chief purpose in making decisions as to the applicable law is to carry out the intention of the creator of the trust in the disposal of the trust property. It is important that his intention, to the extent to which it can be ascertained, should not be defeated, unless this is required by the policy of a state which has such an interest in defeating his intention, as to the particular issue involved, that its local law should be applied ...
Section 268(1) of the Restatement provides: “A will or other instrument creating a trust of interests in movables is construed in accordance with the rules of construction of the state designated for this *191 purpose in the instrument.” Comment (b) of this section states:
When law designated by the settlor or testator to govern construction[,] [t]he courts will give effect to a provision in a trust instrument ... that it should be construed in accordance with the rules of construction of a particular state. It is not necessary that this state have any connection with the trust. This is because construction is a process for giving meaning to an instrument in areas where the intentions of the party, or parties, would have been followed if they had been made clear, (emphasis added)
Finally, as to the trust’s validity, § 270(a) of the Restatement states that an inter vivos trust is valid if valid
[U]nder the local law of the state designated by the settlor to govern the validity of the trust, provided that this state has a substantial relation to the trust and that the application of its law does not violate a strong public policy of the state with which, as to the matter at issue, the trust has its most significant relationship....
Comment (b) to § 270 of the Restatement states:
Law designated by the settlor to govern validity of the trust. Effect will be given to a provision in the trust instrument that the validity of the trust shall be governed by the local law of a particular state, provided that this state has a substantial relation to the trust and that the application of its local law does not violate a strong public policy of the state with which as to the matter at issue the trust has its most significant relationship.
A state has a substantial relation to a trust when it is the state, if any, which the settlor designated as that in which the trust is to be administered, or that of the place of business or domicile of the trustee at the time of the creation of the trust, or that of the location of the trust assets at that time, or that of the domicile of the settlor, at that time, or that of the domicile of the beneficiaries. There may be other contacts or groupings of contacts which will likewise suffice.
Analysis
On appeal, the Trustee does not contend there was a genuine issue of material fact that prevented entry of summary judgment for Herbert on the choice of law question. Instead, the Trustee argues that on the undisputed facts before us, the bankruptcy court erred as a matter of law in concluding that Hawaii law applied.
First, the Trustee maintains that the strong public policy of California embodied in Cal. Prob.Code § 15306.5 demonstrates that California had a materially greater interest in the spendthrift trust than Hawaii. According to the Trustee, Cal. Prob. Code § 15306.5 reflects the California legislature’s intent that “trust-fund babies” should get no better treatment than wage earners when it comes to judgment creditors.[11] Thus, the Trustee argues, the legislature enacted Cal. Prob.Code § 15306.5 to correspond to the wage garnishment statute which subjects wage earners to a levy on twenty-five percent of their monthly income.
Second, the Trustee contends that the court erred by giving some factors under the Restatement little weight. In this regard, the Trustee contends that California is not only the forum of the dispute, but also the forum that Debtors themselves chose. The Trustee further asserts that California has the most substantial relation *192 to the trust, because Herbert&emdash;both as trustee and as one of the trust’s primary beneficiaries&emdash;is and has been a California resident and seeks to retain his exempt assets pursuant to California’s exemption scheme. We address each of the Trustee’s arguments in turn.
As can be seen by the rules stated above, choice of law questions involve a multi-step analysis in which a variety of factors are considered. We start from the premise that the Restatement reflects a strong policy favoring enforcement of choice of law provisions. In the contract area this policy protects the justified expectations of the parties and in the trust area this policy carries out the intention of the creator of the trust which is given great import. In addition, choice of law provisions are usually respected by California courts in the area of both contracts and trusts. See Nedlloyd Lines, 11 Cal.Rptr.2d 330, 834 P.2d at 1151; Cal. Prob. Code § 21103.[12] We thus examine whether any exception to the general rule of upholding a party’s choice of law is warranted under these circumstances.[13]
Under the Restatement, Sally’s choice of Hawaii law should be upheld if Hawaii has a substantial relation to her trust. Restatement § 187(2)(a); § 270(a). Comment b of § 270 of the Restatement provides that a state has a substantial relation to a trust if at the time the trust is created: (1) the trustee or settlor is domiciled in the state; (2) the assets are located in the state; and (3) the beneficiaries are domiciled in the state. These contacts with the state are not exclusive.
Applying these contacts, there is little question that the State of Hawaii has a substantial relation to the Sally Zuker-korn Trust. At the time Sally created the trust in 1978, approximately 34 years ago, the trustee and settlor (Sally) was domiciled in Hawaii, her assets were located in Hawaii, and Herbert, one of the beneficiaries, was domiciled in Hawaii and remained a citizen of Hawaii for over 70 years. Furthermore, the trust is administered by a Hawaii corporate trustee. These same contacts&emdash;and there is nothing in the record to the contrary&emdash;demon-strate that Sally had a reasonable basis for her choice of Hawaii law to govern her trust. Because Hawaii has a substantial relationship to the parties and a reasonable basis otherwise exists for the choice of law, Sally’s choice will be enforced unless the Trustee can establish (1) that the chosen law is contrary to a fundamental policy of California and (2) that California has a materially greater interest in the determination of the particular issue. Wash. Mut. Bank, FA v. Sup. Ct., 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1079 (2001).
There is no bright-line definition of a “fundamental policy.” Restatement § 187 comment g. A fundamental policy must be “substantial,” and “may be embodied in a statute which makes one or *193 more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.” Id. “California’s narrow, public policy exception to the resolution of conflicts through a neutral comparison of government interests ... applies only when foreign law is so offensive to [California] public policy as to be ‘prejudicial to ... recognized standards of morality and to the general interest of the citizens McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1423 n. 8 (9th Cir.1989) (quoting Wong v. Tenneco, Inc., 89 Cal.3d 126, 216 Cal.Rptr. 412, 702 P.2d 570, 576 (1985)). Under these standards, we understand the public policy exception in choice of law analysis to require something more than the law of the other state be different from the law of California.
Here, the Trustee simply points to Cal. Prob.Code § 15306.5 as if it were a statutory declaration that California public policy would be offended by enforcing the choice of law clause in Sally’s trust. The Trustee has not identified any recognized standard of morality in California that is impacted by the application of Hawaii law in this case nor does she explain how upholding a Hawaii choice of law clause in an otherwise valid spendthrift trust adversely affects the “general interests of Californians.” Although self-settled trusts are void and against public policy in California, as found by the bankruptcy court here and not challenged on appeal, the Sally Zukerkorn Trust is not a self-settled trust.[14] Without more, there is inadequate authority for us to find that Cal. Prob. Code § 15306.5, standing alone, is a fundamental policy of California.
Even if we were to find that California has such a fundamental policy, pursuant to the Restatement (Second) of Conflict of Laws § 187(2)(b), the Trustee still has to show that California has a materially greater interest than Hawaii in the determination of the particular issue. The relative weight of material interest in the determination of an issue requires the court to weigh a number of factors, including where the contract was made, the state where a party to the contract is domiciled, where the events that are the subject of the case transpired, the origin of the laws that plaintiffs seek to invoke, the public policy expressed by those laws, the number of contacts a state has with the subject matter of a case, and the nature of the state’s interest in the case. Klussman v. Cross Country Bank, 134 Cal.App.4th 1283, 1299, 36 Cal.Rptr.3d 728 (Cal.Ct.App.2005).
The Trastee argues that California has a materially greater interest than Hawaii because (1) Herbert is now domiciled in California;[15] (2) the chapter 7 petition was filed in California; and (3) some of Debtors’ scheduled unsecured creditors are located in California.
*194 At first blush, the Trustee’s argument has appeal. Upon the filing of their bankruptcy, debtors obtained the benefit of California exemption laws based on the fact that California was their domicile. These laws allow Debtors to shield certain assets from execution by their creditors. Therefore, it could be said that California has some interest in the choice of law determination at issue in this case because Debtors have taken advantage of its laws that regulate debtor-creditor relationships. However, as noted above, a number of essential elements demonstrate that Hawaii had the more substantial relation to the trust and that the State of California had no relationship with the Sally Zuker-korn Trust other than the fact that Herbert, one of the beneficiaries, lived in California. Therefore, on balance, we cannot say that under these circumstances California has a “materially greater” interest than Hawaii in the determination of the choice of law issue.
Finally, we are not persuaded by case law the Trustee cites in support of her position. In Marine Midland Bank v. Portnoy (In re Portnoy), 201 B.R. 685 (Bankr.S.D.N.Y.1996), Larry Portnoy transferred all of his personal property to an offshore trust at a time he knew that his guarantee to a New York bank of the debts of his New York company would soon be called. Portnoy was both the settlor and beneficiary of the offshore trust. After he filed his chapter 7 petition, the creditor that held his guaranty sought to deny his discharge alleging, among other things, that Portnoy had transferred his assets to an offshore trust in Jersey, but remained de facto owner by continuing to maintain unlimited control over the assets and conceal the trust.
In deciding whether debtor had control over the assets of the trust, the court first had to decide whether the law of New York or Jersey law, which was the trust’s choice of law, supplied the substantive rules. The court found:
That Portnoy settled the trust in Jersey, designated the trust to be administered in Jersey, and appointed a Jersey resident as trustee, gives Jersey an undeniable relationship to the trust. On the other hand, Portnoy, who is both the settlor and primary beneficiary, Port-noy’s creditors, and the other beneficiaries are all United States domiciliaries. Portnoy’s creditors have no contacts with Jersey, and Portnoy had the greatest contact with the United States at the time he settled the trust and reasonably could have believed that United States law would be applicable.... On balance, I conclude that New York has the weightier concern in determining whether or not whatever rights Portnoy retained after he formed the trust could be considered to constitute a property interest such that that interest should have been disclosed in his bankruptcy schedules. The trust, the beneficiaries, and the ramifications of Portnoy’s assets being transferred into trust have their most significant impact in the United States. In addition, I believe that application of Jersey’s substantive law would offend strong New York and federal bankruptcy policies if it were applied ....
Id. at 698.
In discussing New York’s policies, the court observed that under New York law, “ ‘when a person creates for his own benefit a discretionary trust, his creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit, even though the trustee in the exercise of his discretion wished to pay nothing to the beneficiary or to his creditors, and even though the beneficiary could not compel *195 the trustee to pay him anything.Id. In contrast to New York’s policies, the bankruptcy court found that Jersey’s interest in the trust was perhaps to only “augment business.” Id. at 700. In the end, the court stated: “I think it probably goes without saying that it would offend our policies to permit a debtor to shield from creditors all of his assets because ownership is technically held in a self-settled trust, where the settlor/beneficiary nonetheless retains control over the assets and may effectively direct disposition of those assets.” Id. Based on New York’s “deeply rooted” policies, the court found that New York law applied.
The court also found a second basis for applying New York law. According to the court, a choice of law “will not be regarded where it would operate to the detriment of strangers to the agreement, such as creditors or lienholders.” Id. at 701 (quoting Hong Kong and Shanghai Banking Corp., Ltd. v. HFH USA Corp., 805 F.Supp. 133, 140 (W.D.N.Y.1992)) and citing Carlson v. Tandy Computer Leasing, 803 F.2d 391 (8th Cir.1986); Ferrari v. Barclays Bus. Credit (In re Morse Tool, Inc.), 108 B.R. 384, 386 (Bankr.D.Mass.1989). In that regard, the court found that the only person that was a party to this choice of law provision was Portnoy himself. “Portnoy may not unilaterally remove the characterization of property as his simply by incorporating a favorable choice of law provision into a self-settled trust of which he is the primary beneficiary.” Id.
Portnoy is distinguishable from the facts here. First, unlike Portnoy, we concluded, as did the bankruptcy court, that Sally and her trust had a substantial relation to Hawaii at the time it was created. Moreover, once the Portnoy court found insufficient contacts, its rationale for finding a “deeply rooted” New York policy was based on New York law applicable to self-settled trusts. The policy that a debtor should not be able to escape claims of his creditors by himself setting up a spendthrift trust and naming himself as beneficiary is not unique to New York, but also relevant in California. See Nelson, 33 Cal.2d 501, 202 P.2d 1021. However, because Herbert did not establish a self-settled trust to escape the claims of his creditors, the public policy behind self-settled trusts in California is not applicable here. As stated above, we found no California public policy on spendthrift trusts that warranted application of the public policy exception under the facts of this case.
The Portnoy court’s second reason for applying New York law is also not relevant to this case. The Eighth Circuit’s decision in Carlson v. Tandy Computer Leasing, 803 F.2d 391, 393-94 (8th Cir.1986) discussed choice of law rules with respect to the Missouri Uniform Commercial Code (“U.C.C.”). There, the parties to a contract involving computer equipment were Brock, the lessee, and Tandy, the lessor. Following the execution of the contract, Brock filed a petition in bankruptcy. The bankruptcy trustee attempted to claim the computer equipment for the bankruptcy estate on the basis that Tandy’s interest in the property was an unperfected security interest. Whether the contract was deemed a lease or an installment sales contract would determine whether Tandy could repossess the equipment or whether the trustee had priority over Tandy with respect to the equipment. Id. at 393.
Brock and Tandy had agreed in the lease agreement that Texas law would apply, even though the equipment was located in Missouri. Citing § 1-105 of the Missouri UCC, the court noted that parties were generally free to choose which state’s law shall govern, unless the dispute fell within an exception. Under § 1-105 of the Missouri UCC, there are five exceptions, *196 all involving third party rights, where a choice of law clause in the contract would not prevail. One such limitation was found in § 9-102 of the Missouri U.C.C., which provided that Article 9 of the Missouri U.C.C. shall apply to any transaction intended to create a security interest in personal property located in Missouri. A “lease intended as security” is one type of security interest included in section 9-102.
The court further explained:
The policy behind section 1-105(2), especially as it relates to the scope of Article 9 of the Missouri U.C.C., is to prohibit choice of law agreements when the rights of third parties are at stake.... If we applied Texas law to determine whether a security interest existed here, this would violate a fundamental purpose of Article 9: to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules that govern collateral within the scope of Article 9. In order to prevent the constant unilateral expansion and contraction of the scope of Missouri’s Article 9, a Missouri court would apply Missouri law to determine the scope of Article 9 of the Missouri U.C.C.
Id. at 394. Ultimately, the Eighth Circuit found that the Missouri U.C.C. did not apply, but nonetheless upheld the district’s court application of Missouri law and holding that the agreement between the parties was a lease.
The Portnoy court adopted the reasoning behind the U.C.C. choice of law rules for purposes of the self-settled trust involved. However, that reasoning does not apply under the facts of this ease. We decline to import the rule in Portnoy simply because the Trustee enjoys the rights of a judgment creditor under § 544(a)(1). Further, importing such a rule under these circumstances would completely ignore Sally’s intent when she created her trust. The choice of law rules in the Restatement state that only in the absence of a substantial relationship, or if public policy dictates, should courts deny a party’s choice of law.
Last, in In re Morse Tool, Inc., 108 B.R. 384 (Bankr.D.Mass.1989), the bankruptcy court disregarded a choice of law provision when ruling in an adversary action that was a fraudulent conveyance matter. The court found that the parties to a contractual conveyance cannot in their contract make a choice of law that binds creditors who allege that they were defrauded by the conveyance. Id. at 386. The rule in this case has no bearing on the outcome of this appeal.
For all these reasons, we agree with the bankruptcy court that Sally’s choice of Hawaii law should be applied to her trust. Accordingly, the bankruptcy court properly granted summary judgment in favor of Herbert on the choice of law issue.
Although § 541(c)(2) excludes the corpus of the trust from property of the estate, the postpetition distributions of income from a spendthrift trust may become property of the estate under § 541(a)(5)(A) if the trust is testamentary in nature. Relying on § 541(a)(5)(A), the Trustee maintained that she was entitled to $42,000 in income distributions that Herbert received for the 180 days after the filing of his bankruptcy.
The bankruptcy court rejected this position because § 541(a)(5)(A) does not apply to inter vivos trusts. In re Newton, 922 F.2d at 1384 n. 6. The Trustee concedes in her appeal brief that § 541(a)(5)(A) was inapplicable because the Sally Zukerkorn Trust was an inter vivos trust. Nonetheless, relying on In re Newton, the Trustee asserts for the first time on appeal that the 180-day limitation under § 541(a)(5)(A) was immaterial and that once Herbert was *197 actually paid distributions from the trust, the distributions became property of the estate under §§ 541(a)(6) and (7). These arguments do not appear in the record and the bankruptcy court’s decision following the evidentiary hearing does not address either of these statutes. We decline to consider these issues which are raised for the first time on appeal. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir.2004).
VI. CONCLUSION
For the reasons stated, we AFFIRM.

. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule” references are to the Federal Rules of Bankruptcy Procedure.

. Herbert paid himself a $986 monthly fee for his duties as spendthrift trustee for himself. Herbert also received $4,841 per month in beneficiary income distributions.

. Cal. Prob.Code § 15306.5 provides in relevant part:
(a) Notwithstanding a restraint on transfer of the beneficiary’s interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee’s discretion, has determined or determines in the future to pay to the beneficiary.
(b) An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary....

. Section 541(a)(5)(A) provides that the estate includes:
Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date^— (A) by bequest, devise, or inheritance;....

.At issue in the evidentiary hearing was whether the spendthrift trust was enforceable under Hawaii law when Herbert was both the beneficiary and dominant spendthrift trustee. The issue which generated the evidentiary hearing has not been briefed by the Trustee in this appeal and therefore has been waived. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999). In the Memorandum on Motion for Turnover, the bankruptcy court upheld the spendthrift provision finding that Herbert did not have full control over the trust assets and that the whole purpose of the trust was to keep Herbert from exercising unfettered control equivalent to ownership. The court further found that under Hawaii law, Herbert’s interest was protected from the claims of creditors incurred for the necessities of life and taxes.

. The Trustee listed two additional issues on appeal in her Designation of Record and Statement of Issues on Appeal: (1) Did the Bankruptcy Court err in concluding that the Debtor's entire interest in the principal and income of a spendthrift trust was not property of the estate where the Debtor exercised discretionary control over the Trust as both trustee and beneficiary? and (2) Did the Bankruptcy Court err in concluding that the Debtor’s entire interest in the principal and income of a spendthrift trust was not property of the estate where the Debtor owed substantial claims to creditors for the necessities of life? These issues were not discussed on appeal and therefore have been waived. Smith, 194 F.3d at 1052.

. In addition, Hawaii law provides that a restriction on transfers in a Hawaii trust instrument is a restriction "that is enforceable under applicable nonbankruptcy law within the meaning of § 541(c)(2) of the Bankruptcy Code.” Haw.Rev.Stat. § 554G-5(d).

. Even then, this rule is subject to further qualification. California law imposes a significant limitation on a creditor's right to reach payments made to a beneficiary of a spendthrift trust. Cal. Prob.Code § 15306.5(c) exempts from payments to which a creditor would be entitled under Cal. Prob.Code § 15306.5 "any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support."

. The general factors relevant to a choice of law analysis are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. These factors are not exclusive and "[vjarying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law.” Restatement § 6 cmt. c.

.It has been said that trust law lies between, but also overlaps, with contract law and property law. See Thomas P. Gallanis, The New Direction of Am. Trust Law, 97 Iowa L.Rev. 215, 234 (2011). Those who view trust law as closer to contract law see a trust as a contract between the settlor and the trustee, with the trust's beneficiaries being "akin to contractual third-party beneficiaries.” Id. at 235. Those who view trust law as closer to property law, view a trust as "a property arrangement arising from a conveyance or devise, not a contract.” Id. Under either view, the choice of law rules for contracts and trusts set forth in the Restatement contain factors that are substantially similar for purposes of our analysis.

. We could locate no reference to trust-fund babies in connection with the statute.

. Cal. Prob.Code § 21103 provides:
The meaning and legal effect of a disposition in an instrument is determined by the local law of a particular state selected by the transferor in the instrument unless the application of that law is contrary to the rights of the surviving spouse to community and quasi-community property, to any other public policy of this state applicable to the disposition....

. The dissent departs from our analysis in one sharp respect which leads to its different conclusion: rather than give weight to the expectations of Sally as creator of the trust when she chose Hawaiian law to govern the execution of her wishes, the dissent ignores Sally altogether and focuses instead on Herbert and his creditors as the only relevant parties. We believe this vision ignores the principles of the Restatement and leads to the incorrect result.

. California law voids self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors. Nelson v. Cal. Trust Co., 33 Cal.2d 501, 202 P.2d 1021 (1949). The Nelson court explained the rationale for the rule:
It is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it, and where the settlor makes himself a beneficiary of a trust any restraints in the instrument on the involuntary alienation of his interest are invalid and ineffective.
Id. at 1021.

. Herbert Zukerkorn’s children who are the remainder beneficiaries of the Zukerkorn Trust are not residents of California. The Trustee has not pointed to any authority that eliminates from consideration secondary beneficiaries.