Filed 2/18/21  McQueen v. Ervin Cohen & Jessup LLP CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| KATHY MCQUEEN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERVIN COHEN & JESSUP LLP et al.,<br><br>    Defendants and Appellants. | B301637<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV07472) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, John Haubrich, Jr., and Hider J. Al-Mashat for Defendants and Appellants.

Cummings & Franck, Scott O. Cummings, Lee Franck, and Lindsey M. Crismon for Plaintiff and Respondent.

_____

Defendants appeal the denial of their petition to compel arbitration of plaintiff's employment claims. The employee argues that defendants' arbitration agreement does not satisfy the minimum requirements for a valid arbitration agreement of employment disputes set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*). Among other things, *Armendariz* instructs that an arbitration agreement in the employment context must permit the selection of a neutral arbitrator and require that the employer bear all costs and fees that would not have been incurred in a judicial forum. We conclude that the arbitration agreement at issue here satisfies these requirements.

The employee also argues that the arbitration agreement was invalid because it was procedurally and substantively unconscionable. Although we agree that the arbitration agreement is procedurally unconscionable, we conclude the employee has failed to demonstrate substantive unconscionability. Because procedural unconscionability alone is insufficient to invalidate the arbitration agreement, the trial court erred in not enforcing the arbitration agreement.

We also conclude that the waiver of rights under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) in the arbitration agreement is contrary to public policy and must be severed from the remainder of the arbitration agreement. We reject the employee's argument that the PAGA waiver invalidates the entire arbitration agreement because that agreement is not permeated with illegality and because the agreement itself calls for the severance of any illegal provision.

We reverse the trial court's order denying the employer's petition to compel arbitration. Upon remand, the trial court shall

2

issue a new order severing the PAGA waiver and granting the employer's petition to compel arbitration.

## BACKGROUND

At the time plaintiff and appellant Kathy McQueen filed her complaint in March 2019, she was a 53-year-old African American female and a former employee of defendant, Ervin, Cohen & Jessup LLP (ECJ). Further according to McQueen, defendants Ronnie Dechezerey and David Tarlow supervised McQueen, during her tenure at ECJ. At or around the same time McQueen commenced working at ECJ, she signed multiple documents including an arbitration agreement (Agreement), which is the centerpiece of the parties' dispute.

McQueen's complaint against ECJ, Dechezeray, and Tarlow alleged the following 16 causes of action: (1) disability discrimination; (2) failure to accommodate/engage in the interactive process; (3) gender/sex discrimination; (4) race/color/national origin discrimination; (5) age discrimination; (6) hostile work environment; (7) retaliation for opposing practices prohibited by the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (8) "Failure to do everything reasonably necessary to prevent discrimination, harassment and retaliation from occurring . . . ."; (9) interference with rights under the California Family Rights Act (Gov. Code, § 12945.2); (10) failure to allow employee accrued time off; (11) violation of Labor Code section 246, governing paid sick days; (12) wrongful termination; (13) negligent hiring and retention; (14) intentional infliction of emotional distress; (15) violation of Business and Professions Code section 17200; and (16) retaliation for whistleblowing in violation of Labor Code section 1102.5. (Some capitalization omitted.) She did not allege a PAGA claim.

3

It is undisputed that all of McQueen's causes of action are within the scope of the Agreement. McQueen does not dispute defendants' argument that if the Agreement is enforceable, then she must arbitrate all her claims.

1. *Arbitration Agreement*

McQueen signed the Agreement on June 28, 2017. ECJ's human resources director also signed the Agreement. The Agreement provides: "Binding arbitration will be the exclusive method to resolve all disputes or controversies arising out of the employment relationship (or its termination) that ECJ may have against Employee or that Employee may have against ECJ and/or against any of ECJ's . . . managers, officers, . . . [or] employees . . . . THIS ARBITRATION AGREEMENT IS A WAIVER OF ANY RIGHT THAT ECJ OR EMPLOYEE MAY HAVE TO LITIGATE ANY CLAIM IN COURT WITH A JUDGE OR JURY TRIAL. Neither ECJ nor Employee can initiate or prosecute any lawsuit based on a Claim covered by this Agreement, whether Employee remains an employee of ECJ or not." (Boldface omitted.)

The Agreement states that it is governed by the Federal Arbitration Act "and in conformity with the procedures of the California Arbitration Act (California Code of Civil Procedure section 1280 et. seq.). Employee and ECJ will select an arbitrator by mutual agreement. If Employee and ECJ are unable to agree on a neutral arbitrator, either party may elect to obtain a list of arbitrators from the Judicial Arbitration and Mediation Service ('JAMS'), the American Arbitration Association ('AAA'), or any other reputable dispute resolution organization."

With respect to the qualifications of the arbitrator, the Agreement states: "The arbitrator shall be an active or retired

judge, or a person with at least ten (10) years experience in the private practice of law in a law firm of over twenty-five (25) attorneys."

With respect to the costs of the arbitration, the Agreement provides: "To ensure that both ECJ and Employee are satisfied with this cost effective and efficient means of resolving disputes, ECJ will pay for all of the reasonable and necessary fees and costs of the arbitration forum and of the arbitrator. ECJ may, however, be entitled to reimbursement of those fees and costs that Employee would have otherwise incurred in a judicial proceeding pursuant to a ruling by the arbitrator."

Under the Agreement, "[t]he arbitrator will have the authority to award any form of remedy or damages that would be available in a court of proper jurisdiction."

The Agreement contains the following PAGA waiver: "All Claims brought under this Agreement shall be brought in the individual capacity of the Employee or the Firm. This Agreement shall not be construed to allow or permit Claims to proceed as a class action, collective action, private attorney general action or any similar representative action. . . . . Employee expressly agrees to waive any right Employee may have to bring an action on a class, collective, private attorney general, representative or other similar basis."

## 2. *Defendants' Petition to Compel Arbitration*

On May 13, 2019, defendants filed a petition to compel arbitration. Defendants argued that McQueen agreed to arbitrate all her claims. Defendants further argued that the Agreement is not unconscionable and is enforceable because it satisfies the enforcement criteria in *Armendariz*. Defendants

also maintained that if any provision of the Agreement were unenforceable, the trial court should sever that provision.

ECJ's director of human resources provided a declaration stating that McQueen "was hired by ECJ as a billing specialist on or about June 28, 2017.  On June 28, 2017, Plaintiff signed the Binding Arbitration Agreement."

### 3. *McQueen's Opposition to the Petition to Compel Arbitration*

McQueen opposed defendants' petition to compel arbitration.  She argued that the Agreement did not satisfy *Armendariz*, *supra*, 24 Cal.4th 83.  She also argued the Agreement is procedurally and substantively unconscionable, and the unconscionable provisions so permeated the Agreement as to prevent severance of the offending provisions.

In a declaration in support of her opposition, McQueen averred that ECJ hired her in July 2017 and, as part of the hiring process, provided her with a "stack of documents" to sign.  McQueen stated that she "had no clue that [she] was signing an arbitration agreement nor was it ever explained to [her] . . . ."

### 4. *Trial Court Order*

The trial court denied defendants' petition to compel arbitration.  In its written order, the trial court explained: "Agreement appears to be signed and dated by defendant but only signed and not dated by plaintiff.  Defendant does not provide foundation as to plaintiff's alleged signature—when it took place, how, etc.

"Agreement is a bit vague.  The agreement does not meet *Armendariz* basic standards.

6

"Plaintiff is precluded from bringing or joining in a PAGA claim—that's been determined to be unlawful and contrary to public policy.  [Citation.]  It does not matter that plaintiff is not bringing a PAGA claim.

"The agreement is unconscionable.  Procedurally, plaintiff was forced to sign the agreement.  Substantively, there is a disparity in paying costs, an arbitrator who must have been [an] attorney for [a] certain required number of years and a non-PAGA clause.

"Agreement is, therefore, both procedurally and substantively unconscionable.  Does not meet *Armendariz* basic standards."

Defendants timely appealed from the order denying their petition to compel arbitration.  An order denying a petition to compel arbitration is appealable.  (Code Civ. Proc., § 1294, subd. (a).)

## STANDARD OF REVIEW

" ' "[W]e review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' [Citation.]  Thus, unconscionability is a question of law we review de novo.  [Citation.]  To the extent the trial court's determination on the issue turned on the resolution of contested facts, we would review the court's factual determinations for substantial evidence." (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82 (*Carmona*).)  In this case, the trial court did not resolve contested facts, and we interpret the Agreement's language de novo.  (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 (*Coast Plaza Doctors Hospital*).)  A trial court's decision regarding severance is

7

reviewed for abuse of discretion. (*Carmona*, *supra*, at p. 83; see also *Armendariz*, *supra*, 24 Cal.4th at p. 122.)

We must grant a petition to compel arbitration based on a written arbitration agreement unless grounds, such as unconscionability, exist to revoke the agreement. (*Carmona*, *supra*, 226 Cal.App.4th at p. 83; see also Code Civ. Proc., § 1281 ["A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."].) We must resolve any doubts regarding the validity of an arbitration agreement in favor of arbitration. (*Coast Plaza Doctors Hospital*, *supra*, 83 Cal.App.4th at p. 686.)

## DISCUSSION

On appeal, McQueen does not dispute that she signed and dated the Agreement. McQueen states that "the Trial Court never relied on whether or not the Agreement was dated to conclude that the Agreement is procedurally and substantively unconscionable" and argues this is a "red herring." In her opposing declaration, McQueen explains the circumstances surrounding her signature. Specifically, McQueen avers that she was given a stack of papers to sign and was told she had to "sign and date each document, if [she] wanted to work for Defendant." McQueen does not assert that she did not sign the Agreement or that there was no foundation for her signature, and we therefore conclude that portion of the trial court's order is not supported by the record.

The issues that the parties vigorously dispute are whether the Agreement complies with the minimum requirements set forth in *Armendariz* and whether the Agreement is invalid

8

because it is unconscionable.  We begin with a summary of *Armendariz* and then turn to the parties' arguments.

1.  ***Armendariz***

Like this case, *Armendariz* involved a "mandatory employment arbitration agreement" required as a condition of employment.  (*Armendariz*, *supra*, 24 Cal.4th at p. 90.)  Two employees filed suit alleging wrongful termination and violation of FEHA.  (*Id.* at p. 92.)  The employees sought general damages, punitive damages, injunctive relief, and the recovery of attorney fees and costs of suit.  (*Ibid.*)

In response to the employees' suit, the employer sought to enforce the following arbitration provision:  " 'I agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. or any successor or replacement statutes.  I and Employer further expressly agree that in any such arbitration, my exclusive remedies for violation of the terms, conditions or covenants of employment shall be limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award.  I understand that I shall not be entitled to any other remedy, at law or in equity, including but not limited to reinstatement

9

and/or injunctive relief.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 92.)

The high court rejected the agreement's limitation of remedies to back wages predating the arbitration award. The high court explained that an arbitration agreement may not limit statutory remedies. (*Armendariz*, *supra*, 24 Cal.4th at p. 103.) It follows that the damage limitation in the parties' arbitration agreement was contrary to public policy and unlawful. (*Id*. at p. 104.) With respect to discovery, the high court held that the employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) . . . ." (*Id*. at p. 106.) By agreeing to arbitrate a FEHA claim, the employer "has already impliedly consented to such discovery." (*Ibid*.) The high court also held that in a FEHA case, the arbitrator "must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." (*Id*. at p. 107.)

With respect to fees and costs of arbitration, an issue critical here, *Armendariz* held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110–111, italics omitted.) "[A] mandatory employment arbitration agreement that contains

10

within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration." (*Id*. at p. 113.) Consistent with that principle, the high court interpreted the parties' agreement as requiring that the employer "bear the arbitration forum costs." (*Ibid*.)

The high court then considered whether the arbitration agreement was unconscionable. " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise' " due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114, italics omitted.)

The agreement at issue in *Armendariz* was procedurally unconscionable because the employer required employees to sign it as a condition of employment and there was no opportunity to negotiate its terms. (*Armendariz, supra*, 24 Cal.4th at pp. 114–115.) Additionally, the "doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker

party without accepting that forum for itself." (*Id.* at p. 118.) The agreement was further unconscionable because it limited damages to backpay lost up until the time of the arbitration. (*Id.* at p. 121.)

Finally, the high court explained that the trial court has some discretion whether to sever unconscionable provisions or to refuse to enforce the entire agreement. (*Armendariz*, *supra*, 24 Cal.4th at p. 122.) The court analogized the severance of provisions in unconscionable contracts to the severance of provisions in unlawful contracts. (*Ibid.*) With respect to unlawful contracts, the court summarized the relevant authority: "Civil Code section 1598 states that '[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void.' Civil Code section 1599 states that '[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.' " (*Armendariz*, at p. 122.) The court continued: " 'Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties. If the contract is divisible, the first part may stand, although the latter is illegal. [Citation.]" [Citations.]' " (*Ibid.*)

A trial court may "refuse to enforce the entire agreement" only when it is " 'permeated' by unconscionability." (*Armendariz*, *supra*, 24 Cal.4th at p. 122.) "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be

12

enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Id*. at p. 124.) In *Armendariz* the high court held that the trial did not abuse its discretion in concluding that the agreement was "permeated by an unlawful purpose" and refusing to sever the unconscionable provisions. (*Ibid*.)

2.    *The Agreement Does Not Violate Armendariz's Minimum Standards*

*Armendariz* held that an employee may be compelled to arbitrate if the arbitration meets "certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Armendariz, supra*, 24 Cal.4th at p. 91.) McQueen argues that the Agreement violates these minimum standards because it requires her to pay for certain arbitration fees and costs unreasonably incurred by her or by defendants in the arbitration; it does not provide for a neutral arbitrator; and it prohibits her from asserting a PAGA claim or benefitting from a PAGA claim.[1]

---

[1] McQueen does not argue that the Agreement does not provide for adequate discovery and a written decision, limits her remedies, or lacks mutuality. Therefore, we need not address defendants' arguments as to these *Armendariz* criteria.

13

### a. Fees and costs

*Armendariz* teaches that an employer cannot require the employee to bear any fees or costs incurred in arbitration that the employee would not have incurred in court litigation. (*Armendariz, supra,* 24 Cal.4th at pp. 110–111.) Citing *Armendariz,* McQueen argues that "[t]he agreement is unenforceable because it requires McQueen to pay for fees and costs that are unreasonable and that she would not be required to pay if the action were in court." (Underscoring omitted.) McQueen hypothecates that she may have to pay fees because of an "unnecessary motion brought by Defendant[s]." McQueen is also concerned that "if a fee or cost of arbitration is determined to be unnecessary or unreasonable, for whatever reason, Plaintiff would be required to pay for that cost." McQueen argues that this could have a "chilling effect" because she will have to surmise whether "taking depositions, calling witnesses and serving written discovery or motions" are necessary. McQueen also argues that under the Agreement, she is liable for the "cost of the arbitration forum and arbitrator."

McQueen's arguments are not grounded in the Agreement's language. The Agreement does not provide that McQueen is required to pay for unreasonable costs, based either on her own or ECJ's conduct. Instead, the actual language of the Agreement requires ECJ to "pay for all of the reasonable and necessary fees and costs of the arbitration forum and of the arbitrator." The Agreement permits ECJ to seek reimbursement only of "those fees and costs that Employee would have otherwise incurred in a judicial proceeding . . . ." This is exactly what *Armendariz* requires. (*Armendariz, supra,* 24 Cal.4th at pp. 110–111.)

14

McQueen, however, points to this same reimbursement language to make the curious argument that the Agreement "surreptitiously" requires her pay for "the cost of the arbitration forum and arbitrator," and that she would not have to pay a judge a fee if she litigated in court. We fail to discern any support in the Agreement for such an interpretation.

The Agreement here contrasts markedly with that in *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248–1249, where the court concluded that allowing the arbitrator to require the losing party to pay the arbitration fee improperly imposed "on the employee costs he or she would not normally have to pay if the case were litigated in a court." (*Id.* at p. 1248.) In *Wherry*, the parties' agreement permitted the arbitrator to "impose costs, including the arbitration fee, on the losing party." (*Ibid.*) There is no such arbitration fee shifting here.

Whereas McQueen assumes that the arbitrator will act outside the law in requiring her to pay fees and costs such as those involved in an unnecessary motion brought by defendants, we must assume the arbitrator will operate in conformity with the law (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 984 (*Dotson*)), and will act reasonably (*Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485, 497 (*Torrecillas*)). Consistent with this principle and based on the plain language of the Agreement, an arbitrator may require McQueen to pay only those fees and costs that she would otherwise have incurred in judicial litigation.

For all these reasons, the trial court's finding of a "disparity in paying costs" is not consistent with *Armendariz*'s precepts and has no basis in the Agreement's language.

15

### b. Neutral arbitrator

McQueen contends the Agreement violates *Armendariz* because it does not provide for a neutral arbitrator. According to McQueen: "Defendant's agreement without reasonable cause limits the number of possible arbitrators to only those who worked for ten (10) years 'in the private practice of law in a law firm of over twenty-five (25) attorneys.' " McQueen further contends that the requirement that the arbitrator practice in a firm with over 25 attorneys is based on ECJ's desire to limit the field of potential arbitrators to lawyers who represent employers because according to McQueen, employment law firms have fewer than 25 employees. In support of that premise McQueen proffered her counsel's declaration describing her survey of 16 jury verdicts in employment cases.[2]

McQueen's argument is unpersuasive because under the Agreement, the parties may select a retired judge as their arbitrator. There is no limitation in the Agreement that the retired judge had to have worked in a law firm, let alone one with more than 25 members. McQueen does not claim, nor could she, that retired judges cannot be neutral in employment cases. The fact that the Agreement lists lawyers as *additional* potential arbitrators does not deprive McQueen of a neutral arbitrator. Stated otherwise, McQueen frames her argument as if her only choice for an arbitrator is an attorney from a law firm with more

---

[2] We question whether counsel's methodology would produce valid statistical data to support her conclusion. We do not have to decide this issue because the Agreement does not limit the pool of arbitrators to practicing attorneys.

than 25 attorneys. Neither the record nor the language of the Agreement supports McQueen's argument.

Finally, although the trial court appears to have concluded that requiring that an attorney arbitrator be licensed for 10 years is evidence of lack of neutrality, no party advances this argument on appeal. The parties appear to agree that the requirement that an attorney possess 10 years of experience does not reflect a bias to either party. We also agree with that proposition. Once again, the parties do not have to select a practicing attorney at all for their arbitrator but may select a retired judge.

### c. PAGA waiver

McQueen argues that the Agreement violates *Armendariz* because it prevents her from asserting a claim under PAGA or benefitting from a PAGA claim asserted by someone else. Under PAGA, " 'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." [Citation.]' " (*Iskanian v. CLS Transportation Los Angeles*, LLC (2014) 59 Cal.4th 348, 380 (*Iskanian*).) A judgment in a PAGA action binds the named employee and any other aggrieved employee. (*Ibid.*)

We agree with McQueen that PAGA waivers in arbitration agreements are unenforceable. In *Iskanian*, our high court held that employees' right to bring a PAGA action is unwaivable. (*Iskanian*, *supra*, 59 Cal.4th at p. 383.) "[W]here . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Id.* at p. 384.)

17

The question is whether the illegal PAGA waiver invalidates the entire Agreement or whether it can be severed from the Agreement. Nothing in *Iskanian* supports the proposition that the presence of a PAGA waiver automatically invalidates the entire arbitration agreement. Indeed, the *Iskanian* court concluded that where an arbitration agreement contains an unenforceable PAGA waiver but is otherwise enforceable, the PAGA claims must proceed in "some forum" while the other claims proceed in arbitration. (*Iskanian*, *supra*, 59 Cal.4th at p. 391.)

Although here the trial court did not consider severance, we may do so in the first instance on appeal. Because only one provision is unlawful and "that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so." (*Dotson*, *supra*, 181 Cal.App.4th at p. 985.) Under these circumstances, a trial court would abuse its discretion in declining to sever the single offending provision. (See *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275 (*Farrar*) [trial court abused its discretion in invalidating entire agreement where only one provision was unconscionable].)

Further, here, severance is the only course consistent with the parties' intent as demonstrated by the following language in the Agreement: "In the event that any of the terms or provisions of this Agreement are [*sic*] found to be legally unenforceable, then the remaining terms and conditions shall nevertheless be fully enforceable without regard to any such provision or terms that are found to be legally unenforceable." (*Keene v. Harling* (1964) 61 Cal.2d 318, 320 [" ' . . . Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court

18

according to the intention of the parties.  If the contract is divisible, the first part may stand, although the latter is illegal. [Citation.]' "].)

Although McQueen opposes severance, she cites no legal authority supporting invalidating the entire Agreement.[3]  Her reliance on *Iskanian* is misplaced because in *Iskanian*, the high court remanded the case to the trial court to determine, among other things, whether individual claims should be arbitrated while the representative PAGA action is being litigated. (*Iskanian*, *supra*, 59 Cal.4th at p. 392.)  McQueen cites *Armendariz*, *supra*, 24 Cal.4th at pp. 124–125 for the proposition that "severance is disfavored in most circumstances." *Armendariz* does not so state.  Instead, *Armendariz* explained that the court must determine whether the illegality is collateral, and if it is, severance is appropriate.  (*Id*. at p. 124.)  In contrast, if the agreement contains multiple illegal provisions or is permeated by an unlawful purpose, severance is inappropriate. (*Ibid*.)  As set forth in our opinion, we reject McQueen's argument that any other provision of the Agreement violates *Armendariz* or is unenforceable or substantively unconscionable.  Accordingly, we reject McQueen's argument that the Agreement is permeated with unconscionability.

*Fitz v. NCR Corp*. (2004) 118 Cal.App.4th 702, also cited by McQueen, echoes *Armendariz*.  *Fitz* states:  "In *Armendariz* the California Supreme Court held that more than one unlawful provision in an arbitration agreement weighs against severance." (*Fitz*, at p. 726.)  In *Fitz*, there was no single provision that the

---

[3]  At oral argument, McQueen's counsel acknowledged that severance would be appropriate if the PAGA waiver were the only offending provision.

19

court could strike in order to avoid unconscionability and therefore the court held the entire arbitration agreement was invalid. (*Id*. at pp. 727–728.) In contrast, here, only the PAGA waiver in the Agreement is invalid.

Finally, McQueen argues that severing the unlawful provision will encourage employers to impose illegal clauses on other employees and discourage employers from modifying their unlawful agreements, thereby condoning a "disregard for the law." Although the better course would have been for ECJ to modify its agreement after *Iskanian* invalidated PAGA waivers, any such modification would have had no impact on this case. There is no PAGA claim in this case; the PAGA waiver could not have imposed a burden on McQueen or been unfair to her. (Cf. *Torrecillas, supra*, 52 Cal.App.5th at p. 500 [describing plaintiff's claim under PAGA odd when plaintiff did not sue under that law].) McQueen's speculation about ECJ's incentive for future modification is insufficient to overcome *Armendariz*'s instruction that "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance . . . then such severance . . . [is] appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.)

### 3. *Although the Agreement is Procedurally Unconscionable, It is Not Substantively Unconscionable and Therefore Is Not Invalid*

An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. (*Armendariz, supra,* 24 Cal.4th at pp. 98, 99.) "Unconscionability includes both substantive and procedural elements. [Citation.] Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as

20

unequal bargaining power between the parties and hidden terms included in contracts of adhesion.  [Citation.]  Substantive unconscionability addresses the impact of the term itself, such as whether the provision is so harsh or oppressive that it should not be enforced.  [Citation.]  These elements, however, need not be present to the same degree.  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099–1100, fn. omitted (*Szetela*), abrogated on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 346–348.)

McQueen argues that the Agreement is procedurally and substantively unconscionable.  McQueen, as the party resisting arbitration, had the burden of proof to show unconscionability. (*Szetela, supra,* 97 Cal.App.4th at p. 1099.)

### a.    **Procedural unconscionability**

" '[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.  [Citation.] . . . [T]here are degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . .  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.  [Citation.]  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear

21

within them the clear danger of oppression and overreaching." [Citation.]' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)

"[T]he initial question regarding procedural unconscionability is whether the contract was one of adhesion, namely, a ' "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' " (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 103.)

Here, the Agreement was procedurally unconscionable because McQueen had no choice but to sign it if she wanted employment with ECJ. ECJ, moreover, gave her no opportunity to negotiate the terms of the Agreement. In opposing the motion to compel arbitration, McQueen proffered her own declaration stating that an ECJ representative told McQueen that she had to sign a stack of documents as a condition of employment, and that included in that stack was the Agreement. ECJ does not dispute McQueen's factual assertions. Her uncontested declaration describes a contract of adhesion, which is evidence of procedural unconscionability. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915 ["adhesive nature of contract is sufficient to establish some degree of procedural unconscionability"].)

### b. Substantive unconscionability

Substantive unconscionability focuses on " ' "overly harsh or one-sided results." ' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1243.) McQueen argues that the Agreement was substantively unconscionable because she is required to bear costs of arbitration and there was a false appearance of mutuality in selecting an arbitrator. We have already rejected those

22

arguments as inconsistent with the plain language of the Agreement.  Based on reading the entire Agreement, which we must, McQueen is responsible only for those costs and fees she would otherwise have incurred in litigation in court.  As we have also explained, there is nothing in the Agreement depriving McQueen of a neutral arbitrator.

We need not further consider McQueen's argument that the PAGA waiver renders the Agreement substantively unconscionable, because as explained above, the language of the Agreement permits severing the PAGA waiver from the Agreement, and we reject McQueen's contention that the Agreement is permeated by unconscionability.  Because McQueen demonstrates only procedural unconscionability, we enforce the Agreement.  (*Baltazar*, *supra*, 62 Cal.4th at p. 1243; *Farrar*, *supra*, 9 Cal.App.5th at p. 1265.)

## 4.    *Delegation Clause*

On appeal, defendants argue for the first time that the delegation clause requires the arbitrator to decide whether the Agreement is enforceable.[4]  We conclude defendants forfeited this argument by failing to raise it below.

A claim of error may be impliedly waived if the appellant failed to bring the error to the trial court's attention in an appropriate manner.  (*Mesecher v. County of San Diego* (1992)

---

[4] Defendants rely on the following language in the Agreement:  "The arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable."

23

9 Cal.App.4th 1677, 1685.) In their motion to compel arbitration, defendants did not assert that an arbitrator should decide the enforceability of the Agreement. Instead, "Defendants respectfully request[ed] that the Court grant" its petition to compel arbitration. Although we have discretion on appeal to consider an appellant's new theory on a pure question of law (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767), we decline to consider defendants' delegation argument, which directly conflicts with its argument in the trial court. Defendants either invited the error or expressly agreed to the procedure now challenged on appeal. It took actions directly opposed with the right to arbitrate the enforceability of the Agreement. Defendants cannot now complain that the court did not have authority to decide the very issues defendants requested the court decide.[5] (*Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1124 [failure to raise contention that arbitrator should have decided severability was invited error].)

---

[5] Because we conclude defendants forfeited their argument based on the delegation clause, we need not consider McQueen's argument that the delegation clause is unenforceable.

## DISPOSITION

The order denying defendants' motion to compel arbitration is reversed and the matter is remanded to the trial court with directions to enter a new order severing the PAGA waiver from the Agreement and granting Ervin Cohen & Jessup LLP's, Ronnie Dechezeray's, and David Tarlow's petition to compel arbitration.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                    BENDIX, J.

We concur:



            ROTHSCHILD, P. J.



            FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.